In re B.A. LITTLE, Alex B. Smith, d/b/a Little and Smith Farms, a Partnership, Debtors.

**EASTOVER BANK FOR SAVINGS, Plaintiff,**

v.

**Alex B. SMITH, Dorothy L. Smith, B.A. Little, Bernice H. Little, d/b/a Little and Smith Farms, a Partnership, Defendants.**

Bankruptcy No. E85–30076.
Adv. No. 90–2185.

United States Bankruptcy Court,
N.D. Mississippi.

Feb. 27, 1991.

W. Stephens Cox, Merkel and Cocke, Clarksdale, Miss., for debtors/defendants.

E. Stephens Williams, Esq., Young, Scanlon & Sessums, Jackson, Miss., for Eastover Bank for Sav.

## OPINION

DAVID W. HOUSTON, III,
Bankruptcy Judge.

On consideration before the Court is the motion for summary judgment filed by the plaintiff, Eastover Bank for Savings, hereinafter referred to as Eastover; response to said motion having been filed by counsel for the named defendants; and the Court having reviewed the bankruptcy case file, the adversary pleadings, certain discovery materials, and the memoranda of law submitted by the parties, hereby finds as follows, to-wit:

### I.

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. The essential purpose of the complaint filed by Eastover is to obtain a declaratory judgment concerning the preclusive effect of certain court orders entered during the administration of the debtors' bankruptcy estates. In addition, the complaint seeks to enjoin the defendants from pursuing a state court cause of action against Eastover. As such, the Court is of the opinion that the cause of action filed herein by Eastover is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (O).

### II.

### FACTUAL SUMMARY

The defendants in this adversary proceeding are debtors who have filed bankruptcy cases in this Court. Their cases are identified as follows:

*In re: B.A. Little, Alex B. Smith, d/b/a Little and Smith Farms, A Partnership,* Bankruptcy Case No. E85–30076, Filed May 13, 1985.

*In re: Alex B. Smith and Dorothy L. Smith,* Bankruptcy Case No. 86–30081, Filed May 14, 1985.

*In re: B.A. Little and Bernice H. Little,* Bankruptcy Case No. 85–30082, Filed May 14, 1985.

The three bankruptcy cases were consolidated for joint administration on June 20, 1985.

On March 16, 1984, the defendants executed a promissory note in the original principal sum of $560,020.00, due and payable on February 1, 1985, to Peoples Bank of Mississippi, N.A. of Grenada, Mississippi, referred to hereinafter as Peoples Bank. Peoples Bank was subsequently merged into the plaintiff, Eastover Bank for Savings. The purposes of this particular promissory note were to provide the defendants with sufficient funds to pay off an existing indebtedness owed to the Bank of Mississippi, and to provide the defendants with a line of credit to finance their 1984 crop. From the proceeds of this loan, the defendants satisfied the Bank of Mississippi indebtedness in the sum of $419,412.53. Thereafter, they drew against the line of credit an additional sum of $153,439.00, which was utilized in connection with the production of the aforesaid crop. On February 1, 1985, the express due date of the promissory note, after applying partial payments made by the defendants, the balance owed on the debt was $533,251.53.

In their state court cause of action, the defendants have claimed that the terms of the aforesaid promissory note did not comply with the terms of a verbal loan agreement negotiated with Jerry Wilson, then president of Peoples Bank. Instead, they have alleged that Peoples Bank agreed to allow them to repay that portion of the loan which was utilized to satisfy the Bank of Mississippi indebtedness over a period of ten years. The remaining portion of the loan, utilized for crop production, was to be paid in full on February 1, 1985, as set forth in the promissory note.

Later in 1984, Wilson was replaced as president of Peoples Bank by William McKeller. In the fall of that year, McKeller advised the defendants that the entire balance of their note, as opposed to only the crop production portion, would be due and payable in full on February 1, 1985. When confronted with this position, the defendants attempted to obtain replacement financing, but were unsuccessful.

The loan in favor of Peoples Bank was secured by the defendants' real property and farm equipment. The bank had been furnished detailed real estate appraisals which indicated that the farm property was worth $1,003,215.00, and that the combined worth of Mr. and Mrs. Little's separate homestead and the farm equipment was an additional $300,000.00.

When the defendants were unable to arrange alternative financing or to negotiate a more suitable repayment plan with Peoples Bank, they filed the aforementioned bankruptcy cases. During the course of the administration of the bankruptcy estates, none of the defendants mentioned any claim against Peoples Bank or its successor, Eastover, in the statement of affairs, the bankruptcy schedules, the disclosure statement, or the plans of reorganization. Although admittedly aware of their dispute with Peoples Bank and/or Eastover, the defendants listed the indebtedness owed to the bank as noncontingent and undisputed. They also indicated that there were no contingent or unliquidated claims that could be considered as assets of the bankruptcy estates.

On September 12, 1985, the defendants filed their disclosure statement and initial plan of reorganization. This plan indicated that Peoples Bank held a secured claim in the sum of $684,800.00, which was purportedly equivalent to the defendants' evaluation of the real property, as well as, a secured claim in the sum of $227,900.00, which was purportedly equivalent to their evaluation of the farm equipment. Peoples Bank was to be paid over a period of twenty-five years in equal annual installments of principal, plus accrued interest at a variable rate, beginning December 31, 1985.

Although the defendants' plan of reorganization did note potential claims against other creditors, i.e., Massey Ferguson Credit Corporation, no claim or dispute was listed in any of the documents with respect to Peoples Bank.

On March 6, 1986, the defendants amended their disclosure statement to devalue the real property from $684,800.00 to $394,500.00. The defendants filed an amended plan of reorganization on May 20, 1986, which provided as follows:

Peoples Bank of Mississippi holds first deed of trust on approximately 810 acres of real property and a security interest in farm equipment of debtors and will retain its liens until paid in full. The real property of the debtors held as security is valued at Three Hundred Ninety–Four Thousand Five Hundred Dollars ($394,500.00) (810 acres at $450.00 an acre and the house of B.A. Little and Bernice H. Little at $30,000.00). The equipment is valued at Two Hundred Twenty–Seven Thousand Nine Hundred Dollars ($227,900.00). Peoples Bank of Mississippi shall receive a cash payment upon confirmation in the amount of Fifty Thousand Dollars ($50,000.00). The debtors will pay 100% of the allowed claim remaining as follows:

Debtors will execute a new promissory note with interest at the current variable interest rate payable in equal annual installments of Ninety–Five Thousand Dollars ($95,000.00) for ten (10) years beginning on December 31, 1986; annual payments will be applied first against interest then against principal; any remaining principal and accrued interest shall be paid in one payment due and payable ten (10) years after confirmation.

The amended plan of reorganization was confirmed by the Court on August 5, 1986. To implement the confirmed plan, on July 2, 1986, the defendants executed a new promissory note payable to the bank in the total principal sum of $627,604.61, which was due and payable on December 31, 1986. On that same date, i.e., December 31, 1986, the defendants were to pay $95,000.00 to the bank and, thereafter, were to renew the balance. This treatment was accepted by the bank, and, ironically, was somewhat similar to the original arrangements that were allegedly promised to the defendants on behalf of the bank by Jerry Wilson.

The defendants defaulted in the obligation to make the installment payment due on December 31, 1986. Eastover,

which had acquired Peoples Bank through the aforementioned merger, filed a motion seeking relief from the automatic stay. The defendants responded to the motion but asserted no setoffs, counterclaims, or dispute with respect to the indebtedness owed to Eastover. Although the automatic stay had effectively been lifted at the time the defendants' plan was confirmed, in order to clarify the issue, the Court entered an order permitting Eastover to proceed in accordance with state law to either foreclose the liens encumbering the defendants' properties or to otherwise effect collection of the promissory note that had been executed by the defendants at the time of confirmation. Eastover did, in fact, institute and complete foreclosure proceedings against its collateral. Thereafter, on February 17, 1988, a final decree was entered closing the defendants' bankruptcy estates.

During the entire time that the bankruptcy cases were open, a period approximating thirty-three months, no mention was ever made of potential claims held by the defendants against Peoples Bank or Eastover.

On November 8, 1988, the defendants filed a lawsuit against Eastover in the Circuit Court of the First Judicial District of Hinds County, Mississippi. Essentially, the complaint stated a lender liability cause of action against Eastover resulting from the alleged breach of the verbal agreement to finance over a period of ten years that portion of the defendants' original loan with Peoples Bank which was utilized to pay off the Bank of Mississippi. Eastover filed a motion for summary judgment in that cause of action which was not sustained by the Court.

Following a motion filed by Eastover, this bankruptcy case was reopened by order entered on August 31, 1990. Eastover filed the instant complaint against the defendants on September 18, 1990, and, thereafter, the motion for summary judgment presently under consideration.

### III.

### CONCLUSIONS OF LAW

Before a motion for summary judgment can be granted, the Court must find that there are no genuine issues of material fact in dispute, and it must make this determination considering all evidence in a light most favorable to the non-moving party. *Southern Farm Bureau Casualty Insurance Company v. Brewer*, 507 So.2d 369 (Miss.1987); *Sanford v. Federated Guaranty Insurance Co.*, 522 So.2d 214 (Miss. 1988); *Fruchter v. Lynch Oil Co.*, 522 So.2d 195 (Miss.1988).

Therefore, for purposes of deciding Eastover's instant motion for summary judgment, the Court will assume, *arguendo*, the following facts, to-wit:

1. That Jerry Wilson as the representative of Peoples Bank verbally agreed that the defendants could repay their original loan as follows:

a. $420,000.00 of the loan, which was to be utilized to satisfy the indebtedness owed to the Bank of Mississippi, could be paid off over a ten year period in equal annual installments of principal in the sum of $42,000.00, plus accrued interest on the outstanding balance.

b. The crop production portion of the loan, which would approximate the sum of $150,000.00, would be payable in full on February 1, 1985.

2. That the defendants could successfully prove in their state court cause of action that Peoples Bank breached the aforementioned oral contract, negligently failed to act as a reasonably competent bank would act under like or similar circumstances, was guilty of negligent misrepresentation, breached a fiduciary relationship owed to the defendants, acted in bad faith, or was guilty of constructive fraud and duress. (Parenthetically, however, the Court would hasten to point out that realistically the defendants would be confronted with substantial, if not unsurmountable, obstacles in establishing the various elements of their cause of action. These difficulties would center on several evidentiary problems, as well as, statutory construction, i.e., the Mississippi Statute of Frauds.)

3. That the events which give rise to the defendants' state law cause of action

occurred prior to their filing their bankruptcy cases.

4. That the matters and events, as set forth hereinabove in the factual summary, occurred in the defendants' bankruptcy cases.

Since, for purposes of this opinion, the Court is accepting the matters set forth in the four paragraphs enumerated immediately hereinabove as being established, there can be no dispute that this proceeding is not being viewed in a light most favorable to the defendants. In addition, this approach resolves all material factual disputes in a manner consistent with the defendants' position. Therefore, under these circumstances, the Court is of the opinion that summary judgment is an appropriate mechanism to dispose of this proceeding since the only issues remaining involve questions of law.

The plaintiff argues that the theories of res judicata, equitable estoppel, judicial estoppel, and waiver preclude the defendants from prosecuting their state law cause of action. This Court agrees and will briefly address each of the aforementioned theories.

## RES JUDICATA

■ The principal behind the doctrine of res judicata is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). An action is barred by res judicata or "claims preclusion," if it meets four tests. *United Home Rentals, Inc. v. Texas Real Estate Comm.*, 716 F.2d 324, 328 (1983). These tests are: "the parties must be identical in both suits; the prior judgment must have been rendered by a court of competent jurisdiction; there must have been a final judgment on the merits; and the same causes of action must be involved in both cases." *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir.1983) (*en banc*) (citing *Stevenson v. International Paper Co.*, 516 F.2d 103, 108 (5th Cir. 1975)). Not only does the doctrine of res

judicata apply in the bankruptcy context, but the particular tests described above have been applied by the bankruptcy courts. *See, Katchen v. Landy*, 382 U.S. 323, 334, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966).

Further, the court in *Nilsen* held that a claimant may not bring a second cause of action based on a different theory of recovery for the same injury because "a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit." 701 F.2d at 564. *Nilsen* also held that "res judicata ... bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication." *Id.* at 560 [emphasis in original].

During the administration of their bankruptcy cases, the defendants had at least two opportunities to raise and litigate their dispute with Peoples Bank and/or Eastover. The most significant of these opportunities occurred when the defendants presented their plan of reorganization for confirmation. At no time during the pendency of their bankruptcy cases did the defendants even mention a potential claim against Peoples Bank or Eastover. To the contrary, after their plan had been confirmed, they executed a new promissory note in favor of the bank in the total principal sum of $627,604.61, which was due and payable on December 31, 1986. The significance of this event will be discussed subsequently.

In a case factually similar to the proceeding now before this Court, the Fifth Circuit Court of Appeals in *Southmark Properties v. Charles House Corp.*, 742 F.2d 862 (5th Cir.1984), addressed the preclusive effect of bankruptcy proceedings on subsequently filed litigation. There the court stated as follows:

> Because appellants' present claim and the prior judgment involve the same principal transaction, appellants' claim is barred by res judicata, if the procedural system available to appellants in the reorganization proceedings permitted appellants to raise that claim in those pro-

ceedings.... Appellants do not assert that they lacked such an opportunity and they clearly did not. Appellants had an "absolute and unlimited" right to be heard in the reorganization proceedings.

*Id.* at 871.

The court continued its reasoning as follows:

If Southmark had violated the terms of its mortgage agreement with appellants, and had committed various fraudulent and unlawful acts with respect thereto, as appellants now allege, appellants had ample opportunity to raise those facts as a defense to Southmark's claim, and to request that the trustee assert whatever cause of action the debtor possessed in that regard against Southmark. Appellants instead chose to forego any objections to the assertion of Southmark's secured claim, or the sale of the Charles House property to Southmark. As a result, Southmark's interest was recognized by the trustee and Southmark was allowed to bid in its mortgage debt for the property, without opposition. As the Supreme Court stated in *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979), "[r]es judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." Appellants cannot now undo a judicial decree which they had a full opportunity to contest, and chose not to.

*Id.* at 872.

This Court is of the opinion that the defendants' state law cause of action against the plaintiff is barred by the doctrine of res judicata, which prevents the parties from relitigating issues that could have been raised in a previous proceeding, even a reorganization proceeding, in which a final order was entered by the Court.

## EQUITABLE AND JUDICIAL ESTOPPEL

■ As noted earlier, the defendants never indicated in their statement of affairs, bankruptcy schedules, or disclosure statement that the claim of Peoples Bank was contingent or disputed. Likewise, they never revealed to the Court or any of their creditors that they had a claim against Peoples Bank or Eastover which would have been considered as an asset of their bankruptcy estates. In this context, the plaintiff has cited the case of *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3rd Cir.1988), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988), which comments on and explains the defenses of equitable and judicial estoppel. There the court sustained the dismissal of a debtor's state court cause of action against the defendant bank because of events that had occurred during the administration of the debtor's bankruptcy estate. The Court stated as follows:

The historical facts are undisputed. It is the preclusive effect of the bankruptcy proceeding upon this current action, if any, which is contested; resolution involves interpretation of legal precepts over which we invoke our power of plenary review....

A long-standing tenet of bankruptcy law required one seeking benefits under its terms to satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights. *In Re Hannan,* 127 F.2d 894 (7th Cir.1942).

Section 521 of the current Bankruptcy Code outlines a non-exhaustive list of the debtor's duties in a bankruptcy case. Foremost for our purposes, the debtor is required to 'file a ... schedule of assets and liabilities ... and a statement of the debtor's financial affairs....' 11 U.S.C. § 521(1) (1978).

An additional obligation is imposed by 11 U.S.C. § 1125(b) mandating the filing of a disclosure statement containing 'adequate information.' Section 1125(a) defines adequate information as follows:

§ 1125. Postpetition disclosure and solicitation

(a) In this section—

(1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practica-

ble in light of the nature and history of the debtor ... that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan

. . . .

Concomitant with these prescribed duties is the debtor's 'absolute and unlimited right to be heard in reorganization proceedings.' *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 871 (5th Cir.1984).

We regard the right-conferring language of *Southmark* as confirmation of the debtor's express obligation of candid disclosure. The preparing and filing of a disclosure statement is a critical step in the reorganization of a Chapter 11 debtor. One commentator, citing the relevant legislative history, labeled this duty as the pivotal concept in reorganization procedure under the Code. *5 Collier on Bankruptcy*, Paragraph 1125.03 (15th ed. 1988).

The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient date to satisfy the Code standard of 'adequate information.'

From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case. H.R.Rep. No. 595, 97th Cong., 2nd Sess. 266 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6225. It has been specifically held that a debtor must disclose any litigation likely to arise in a non-bankruptcy contest. *Monroe County Oil Company v. Amoco Oil Co.*, 75 B.R. 158 (S.D.Ind. 1987). The result of a failure to disclose such claims triggers application of the doctrine of equitable estoppel, operating against a subsequent attempt to prosecute the actions. *In Re Galerie Des Monnaies of Geneva Ltd.*, 55 B.R. 253 (Bankr.S.D.N.Y.1985), *aff'd*, 62 B.R. 224 (Bankr.S.D.N.Y.1986).

A strong interest to achieve finality pervades Chapter 11 arrangements. *Bo-hack Corp. v. Iowa Beef Processors, Inc.*, 715 F.2d 703 (2d Cir.1983). This goal of finality was supported by the Supreme Court in *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), holding that confirmation of a plan acts to bar attempts by the parties to relitigate any of the matters that could have been raised during the bankruptcy proceedings. *5 Collier on Bankruptcy*, Paragraph 1141.01[1] (15th ed. 1988). *See also, In Re Penn Central Transportation Co.*, 771 F.2d 762 (3rd Cir.1985), *cert. denied*, 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 576 (1985).

Disclosure is important, in this case, not only to the bank as an adversary and as a creditor, but to the other creditors and to the bankruptcy court. Here, "the silence" in the Oneida bankruptcy record concerning this present claim, as they say in the vernacular, "is deafening." In Schedule A–2 of its Statement of Financial Affairs required by § 521, Oneida acknowledged its debt to the bank in the amount of approximately 7.7 million dollars, without any mention of a setoff. The debt to the bank in part represented principal and interest due on the lending agreements, the alleged breach of which Oneida now seeks to place at issue. In the portion of the statement requiring enumeration of "contingent and unliquidated claims of every nature, *including counterclaims* ...", Oneida listed only an unrelated accounts receivable claim of $6,827,030. (Emphasis added.) We conclude that the reorganization plan presented by Oneida to the creditors for confirmation, lacking disclosure of the potential for recovery against the bank, was informationally deficient, and not cured by the later modification. The original plan failed to alert the creditors to the possible financial benefits enuring to them upon the successful prosecution of the claim.

We can assume that revealing the potential action may also have impacted upon the bank's decision to enter into the stipulation establishing the extent and validity of its lien against Oneida and to

vote for confirmation. The practical effect of a successful prosecution of Oneida's claim would be to require the bank to make restitution of the amount realized on its bankruptcy claim, since Oneida's present action calls into question the bank's right to collect its secured debt. This would also constitute a successful collateral attack on the bankruptcy court's order confirming the reorganization plan. In such circumstances, employment of equitable estoppel is required to preserve the integrity of the earlier proceedings, particularly where, as here, the creditors have reasonably acted in reliance upon the assumed finality and integrity of those adjudications. *County Fuel Company v. Equitable Bank Corporation,* 832 F.2d 290 (4th Cir.1987).

*Id.* at 416–418.

With respect to the doctrine of judicial estoppel, the court commented:

We are also mindful of the equitable concept of judicial estoppel. This doctrine, distinct from that of equitable estoppel, applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation. *Scarano v. Central Railroad Co.,* 203 F.2d 510 (3rd Cir. 1953); *USLIFE Corp. v. U.S. Life Insurance Co.,* 560 F.Supp. 1302 (N.D.Tex. 1983).

We conclude that Oneida's failure to list its claim against the bank worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect. Although we stop short of finding that, as the bank urges, Oneida's prior silence is equivalent to an acknowledgement that it did not have a claim against the bank, we agree that its current suit speaks to a position clearly contrary to its Chapter 11 treatment of the bank's claim as undisputed.

*Id.* at 419.

The facts in the case now before this Court are even stronger to warrant application of the defenses of equitable estoppel and judicial estoppel. In *Oneida* the state court cause of action was filed during the pendency of the bankruptcy case and the debtor amended its plan of reorganization to provide that a portion of any recovery against the bank would be paid over to creditors. In the instant proceeding, the debtors never attempted to amend their plan of reorganization to deal with their claim against Peoples Bank or Eastover, a claim which had obviously arisen before the bankruptcy cases were filed. Therefore, the Court concludes that the defenses of equitable estoppel and judicial estoppel also operate to preclude the defendants' state court cause of action.

### WAIVER

■ Not only did the defendants propose an original plan of reorganization and an amended plan of reorganization, which was subsequently confirmed, they subsequently signed a new promissory note in favor of the bank on July 2, 1986. The Mississippi Supreme Court has recently addressed this issue. In *Austin Development Co. v. Bank of Meridian,* 569 So.2d 1209 (Miss. 1990), the court stated that the execution of a new promissory note, at a time when the maker had full knowledge of defenses to the original note, constituted a waiver of those defenses and obligated the maker to pay the new promissory note. The Court affirmed several of its earlier decisions on this point as follows:

In *Gay v. First Nat'l Bank,* 172 Miss. 681, 160 So. 904 (1935), the Court concisely and emphatically stated the rule of law which governs this case:

Where a party has full knowledge of all defenses to a note and executes a new note payable at a future date, he then waives all his defenses and becomes obligated to pay the new note. *Tallahatchie Home Bank v. Aldridge,* 169 Miss. 597, 604, 153 So. 818. *And where the facts and circumstances are such that a reasonably prudent person, judged by normal standards,*

*would or should have made inquiry, which inquiry, if reasonably pursued and with ordinary diligence, would have led to full knowledge of his defenses, then it becomes the duty of the party or parties to make such inquiry or investigation before executing the renewal note, and if he fail to do so he is as much bound as if he had actual knowledge of all the facts.*

*Id.* 172 Miss. at 686, 160 So. at 905 (emphasis added); *See also Turner v. Wakefield,* 481 So.2d 846 (Miss.1985); *Brickell v. First Nat'l Bank,* 373 So.2d 1013 (Miss.1979); and *Citizens Nat'l Bank v. Waltman,* 344 So.2d 725 (Miss.1977).

In *Waltman, supra,* the majority of the Court stated:

We need not decide whether the jury was properly instructed, nor whether it could properly accept the version of the facts offered by Mrs. Waltman. *Nor need we decide whether, accepting Mrs. Waltman's version of the facts as true, the Bank committed any actionable wrong, either fraudulently or negligently.* We have reached the inescapable conclusion that by executing the last renewal note on August 8, 1973, with full knowledge of the surrounding circumstances, Mrs. Waltman waived any cause of action she might have had against the Bank based on the earlier notes. Therefore, the defendant's peremptory instructions should have been granted.

*Id.* at 727 (emphasis added).

This Court concurs with the reasoning of the Mississippi Supreme Court and holds, under the circumstances of this proceeding, that the defendants effectively waived all defenses to the original promissory note, executed on March 16, 1984, through the execution of the new promissory note on July 2, 1986. As such, they effectively waived their rights to assert the state court cause of action against Eastover.

This conclusion is consistent with the provisions of 11 U.S.C. § 1141(a), which states, inter alia, that the provisions of a confirmed plan bind the debtor and any creditor treated under the plan.

## IV.

The Court therefore concludes that the motion for summary judgment filed by Eastover is well taken and must be sustained. The Court finds that the defendants' state court cause of action against Eastover is barred by the theories of res judicata, equitable estoppel, judicial estoppel, and waiver. By a separate order, the defendants will be permanently enjoined from prosecuting said state court cause of action against Eastover in the Circuit Court of the First Judicial District of Hinds County, Mississippi, as well as, any other courts of competent jurisdiction.