# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 2000-CA-00443-COA

**CLARA WISE**                                                       **APPELLANT**

**v.**

**THE VALLEY BANK**                                             **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 02/25/2000 |
| TRIAL JUDGE: | HON. JOHN L. HATCHER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ELLIS TURNAGE |
| ATTORNEY FOR APPELLEE: | GERALD H. JACKS |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT AWARDED TO DEFENDANT. |
| DISPOSITION: | REVERSED AND REMANDED - 02/05/2002 |
| MOTION FOR REHEARING FILED: | 02/19/2002; REVERSED AND REMANDED - 08/13/2002 |
| CERTIORARI FILED: | 8/27/2002; granted 10/24/2002 |
| MANDATE ISSUED: | |

ON MOTION FOR REHEARING

EN BANC

MYERS, J., FOR THE COURT:

¶1. The motion for rehearing is denied. The original opinion of this Court is withdrawn, and the following opinion is substituted therefor.

¶2. Clara Wise appeals the decision of the Circuit Court of Bolivar County granting summary judgment to Valley Bank. Wise sued Valley Bank for damages contending the bank violated certain duties owed to her as a depositor in the course of investigating a fraudulent withdrawal from her savings account. Finding that there existed genuine issues of material fact for the jury to determine, we reverse and remand the case to the trial court.

## FACTS

¶3. Fifteen hundred dollars was withdrawn from Clara Wise's savings account with Valley Bank on January 3, 1997. The withdrawal was processed on the authority of a written withdrawal slip containing seemingly the signature of Clara Wise. After subsequent investigations by the bank and Wise, it was discovered that a bank employee had forged Wise's signature on the withdrawal slip and taken the money.

¶4. Wise first noticed a discrepancy in her savings account balance when she inquired about her balance when withdrawing fifty dollars from the savings account in March of 1997. Wise was informed by the bank teller processing her transaction that her balance was approximately $1,500. Wise asserted that there was an error as she was certain that approximately $3,000 was contained in her account. Wise was then told that she should discuss the discrepancy with the bank's branch manager the next day. Wise returned to the bank the following day where she met with the branch manager. During this meeting, Wise alleges that the branch manager informed her that he had a videotape of her in the bank on the day the transaction occurred and that he could arrange to have the tape pulled in three days time. Wise asserts that she told the branch manager to get the tape. The branch manager never produced the tape and informed Wise that the tape had been destroyed. The branch manager denies making these statements to Wise. Pursuant to bank policy, the videotape in question would have been destroyed before the discrepancy in Wise's account was discovered.

¶5. The bank conducted an investigation of the discrepancy by questioning its employees, including the teller who fraudulently converted the money, and asserted that she remembered Wise being in the bank on the date in question. The bank also had its officials compare the signature on the January withdrawal slip to the signature card Wise signed when the account was opened. The signatures closely resembled one another. Wise continued to assert throughout the bank's investigation that she had not withdrawn the money. Wise decided to consult an attorney in an effort to find a remedy to her situation. The attorney retained a handwriting expert who reviewed the withdrawal slips from Wise's savings account and determined that the signature on the January withdrawal slip was not Wise's signature but a tracing of it from an earlier withdrawal slip. Wise did not inform the bank of this discovery and proceeded to file the present litigation.

¶6. After receiving notice that Wise had filed suit but before the Bank answered, counsel for Wise showed the Bank's counsel the report of Wise's handwriting expert. Thereafter, the Bank replaced the $1,500 wrongfully taken from Wise's account along with the interest the money would have accrued through the date of reimbursement. The Bank was granted summary judgment on Wise's claim for punitive damages. Aggrieved by this decision, Wise perfected this appeal.

## LEGAL ANALYSIS

### WHETHER WISE PRESENTED A GENUINE ISSUE OF MATERIAL FACT FOR THE JURY TO DETERMINE.

¶7. Wise raises numerous issues in her appellate brief. However, the central consideration within each issue is whether there was a genuine issue of material fact presented for the jury to determine. This Court reviews a lower court's grant or denial of summary judgment *de novo*. *City of Jackson v. Sutton*, 797 So. 2d 977, 979 (¶7) (Miss. 2001). We must examine all evidentiary matters including depositions, admissions in pleadings, affidavits and responses to interrogatories. *Id.* The evidence is viewed "in the light most favorable to the party against whom the motion has been made." *Id.* In so doing if there was no genuine issue of material fact presented, then summary judgment was proper as the moving party was entitled to judgment as a matter of law. *Id.* "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." *Id.* The moving party has the burden of proving that no genuine issue of material fact exists. *Id.* As such, the non-moving party is given the benefit of the doubt. *Id.* With this standard in mind, We look to determine whether a genuine issue of material fact exists in the present case.

¶8. Valley Bank contends that its payment of restitution to Wise foreclosed any claim she would have for actual damages. Further, Valley Bank contends that their actions in no way evidence bad faith, thus foreclosing Wise's claims for emotional stress and punitive damages. Valley Bank is correct in that Miss. Code Ann. § 75-4-103(5) (Supp. 2001) states that absent a showing of bad faith on the part of the banking institute, the measure of actual damages is limited to the amount wrongfully taken from the depositor's account. However, whether or not Valley Bank acted in bad faith during the course of its investigation is a question for the jury.

¶9. Wise alleges that she was informed by Valley Bank's branch manager that the bank had a videotape of Wise in the bank the day the fraudulent transaction was conducted. Wise's daughter also contends that she was informed of the same by the branch manager. Further, Wise and her daughter assert that the branch manager told them that he could show them the videotape in three days time upon their requesting a viewing of same. Wise also alleges that the branch manager later told her that the videotape had been destroyed. Pursuant to Valley Bank's policy, the videotape was destroyed before the discrepancy in Wise's savings account was discovered. Valley Bank denies that these statements were made. As the non-moving party is afforded the benefit of the doubt, we must view the assertions made by Wise as true. Once viewed in this light, these statements take on the appearance of an intentional, material misrepresentation and indicate that Valley Bank did not act in good faith throughout the course of its investigation of this matter.

¶10. These statements when viewed as true, create a genuine issue of material fact for the jury to determine as to whether Valley Bank acted in bad faith during the course of its investigation. The bank was in a relationship of trust with Wise and allegedly misrepresented a material fact to her. As there are genuine issues of material fact for a jury to determine, we reverse the trial court's decision granting summary judgment to Valley Bank and remand this case to the trial court for a trial on the issue of punitive damages.

¶11. **THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY IS REVERSED AND REMANDED FOR A TRIAL ON THE ISSUE OF PUNITIVE DAMAGES. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLEE.**

> **KING, P.J., BRIDGES, THOMAS, IRVING, AND CHANDLER, JJ., CONCUR. McMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J. LEE AND BRANTLEY, JJ., NOT PARTICIPATING.**

McMILLIN, C.J., DISSENTING:

¶12. I respectfully dissent. The relationship between a bank and its depositor is that of debtor and creditor. *Deposit Guaranty Nat'l Bank v. B.N. Simrall & Son, Inc.*, 524 So. 2d 295, 300 (Miss. 1987). The bank, in essence, agrees to repay the debt evidenced by the balance in the depositor's account by disbursing funds according to orders received from the depositor that are in accord with the terms of the deposit agreement. In this case, the evidence indicates that Valley Bank agreed to disburse funds from Wise's savings account upon receipt of a properly executed withdrawal slip. If Wise is entitled to pursue a punitive damage claim, it must be based on evidence both of a breach of the deposit contract, and a showing that the breach was so egregious as to amount to an independent tort. The trial court concluded that the evidence would not support a punitive damage claim and I agree.

¶13. There is, at the outset, no dispute that the bank violated the terms of its contract with Wise when it permitted the withdrawal of $1,500 from the account on a forged withdrawal slip. Under the applicable

statute, the sole obligation of the bank, absent bad faith in its handling of the matter, was to make restitution. Miss. Code Ann. § 75-4-103 (Supp. 2001). Restitution has been made.

¶14. Wise's only remaining viable claim according to the terms of her complaint is for punitive damages. Though her complaint refers to such claims as one for intentional infliction of emotional distress, her prayer for relief asks only for "judgment . . . of $1,500.00 compensatory damages and in the amount of $50,000, 000.00 for punitive damages." A claim for compensation for emotional distress is a form of actual damage. *See Whitter v. Cox*, 799 So. 2d 1, 9-10 (¶¶ 13-14) (Miss. 2000). Punitive damages are designed to punish the actor for particularly blameworthy or reprehensible conduct and to deter similar behavior in the future by the defendant and others, and are unrelated to any injury to the plaintiff. *James W. Sessums Timber Co., Inc. v. McDaniel*, 635 So.2d 875, 880 (Miss. 1994). The two claims - one for intentional infliction of emotional distress and one for punitive damages - though they may evoke similar considerations regarding the allegedly reprehensible nature of the defendant's actions, are simply not the same.

¶15. "Punitive damages may be imposed for breach of contract where such breach is attended by intentional wrong, insult, abuse, or such gross negligence as amounts to an independent tort." *Tideway Oil Programs, Inc. v. Serio*, 431 So. 2d 454, 465-66 (Miss. 1983). The right to have a jury consider a claim for punitive damages is always dependent upon something more than the plaintiff's bare demand. The decision as to whether the defendant's misconduct is sufficiently egregious or offensive as to warrant submission to the jury on the question of punitive damages lies initially with the trial court. *Paracelsus Health Care Corp. v. Willard,* 754 So. 2d 437, 442 (¶ 20) (Miss. 1999). In this case, by granting Valley Bank's request for summary judgment, the trial court in effect concluded that, even if every allegation of conduct on the part of bank officials as made by Wise were accepted as true, the bank's conduct was not so egregious as to amount to an independent tort. That appears to me to be a correct assessment of the available evidence on the subject.

¶16. The majority contends that the claims by Wise and her daughter that a bank officer told them that there existed a videotape of the activities of the bank on the day of the alleged withdrawal that showed Wise making the transaction, if accepted as true by the jury, would support a punitive damage award. There are two instances in the record where that subject came up. First, Wise's daughter testified that she had a telephone conversation with a bank officer on March 14 in which he represented to her that there was a videotape showing the withdrawal which he was prepared to show her, but that when she and her mother appeared in person at the bank on March 24 to try to resolve the matter, "he said that he had destroyed the tape." Wise herself testified that she went to the bank the morning after she discovered the problem with her account and that the bank officer told her, "I can put you in that window withdrawing $1500," to which she replied, by her own testimony, "Pull the tape and prove I'm wrong."

¶17. The trial court concluded that this was insufficient to create a genuine issue as to whether the bank's conduct in the handling of this matter was so offensive as to warrant consideration of punitive damages. Because the matter is before us on a summary judgment motion, we must review that decision de novo. *Yazoo Properties v. Katz & Besthoff Number 284, Inc.*, 644 So.2d 429, 431 (Miss.1994). I would conclude that the evidence, even viewed in the light most favorable to Wise as the non-movant, simply did not demonstrate the sort of wilful, insulting or abusive conduct on the part of bank officials that would warrant submission of the issue of punitive damages to a jury.

¶18. I would affirm the judgment.

**SOUTHWICK, P.J., JOINS THIS SEPARATE WRITTEN OPINION.**