# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CT-00443-SCT

*CLARA WISE*

*v.*

*THE VALLEY BANK*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 2/25/2000 |
| TRIAL JUDGE: | HON. JOHN L. HATCHER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ELLIS TURNAGE |
| ATTORNEYS FOR APPELLEE: | A. LEE ABRAHAM |
| | GERALD H. JACKS |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | COURT OF APPEALS' JUDGMENT REVERSED AND TRIAL COURT'S JUDGMENT AFFIRMED - 12/31/2003 |
| MOTION FOR REHEARING FILED: | 06/12/2003 |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is granted. The original opinions are withdrawn, and these opinions are substituted therefor.

¶2.     In this case, we consider the relationship between a bank and its depositor and the taking of funds from the depositor's account by a bank employee. We hold that no special judge should be appointed to replace either non-participating Chief Justice Pittman or Justice Diaz and that when this Court is evenly

divided, the decision from which the appeal is taken must be affirmed. Further we find that the relationship between Valley Bank and Wise is not one of trust and that Wise has not met the threshold showing of egregious conduct necessary to submit the issue of punitive damages to a jury.

**FACTS**

¶3.    The Court of Appeals' opinion included the following factual background:

> Fifteen hundred dollars was withdrawn from Clara Wise's savings account with Valley Bank on January 3, 1997. The withdrawal was processed on the authority of a written withdrawal slip containing seemingly the signature of Clara Wise. After subsequent investigations by the bank and Wise, it was discovered that a bank employee had forged Wise's signature on the withdrawal slip and taken the money.
>
> Wise first noticed a discrepancy in her savings account balance when she inquired about her balance when withdrawing fifty dollars from the savings account in March of 1997. Wise was informed by the bank teller processing her transaction that her balance was approximately $1,500. Wise asserted that there was an error as she was certain that approximately $3,000 was contained in her account. Wise was then told that she should discuss the discrepancy with the bank's branch manager the next day. Wise returned to the bank the following day where she met with the branch manager. During this meeting, Wise alleges that the branch manager informed her that he had a videotape of her in the bank on the day the transaction occurred and that he could arrange to have the tape pulled in three days time. Wise asserts that she told the branch manager to get the tape. The branch manager never produced the tape and informed Wise that the tape had been destroyed. The branch manager denies making these statements to Wise. Pursuant to bank policy, the videotape in question would have been destroyed before the discrepancy in Wise's account was discovered.
>
> The bank conducted an investigation of the discrepancy by questioning its employees, including the teller who fraudulently converted the money, and asserted that she remembered Wise being in the bank on the date in question. The bank also had its officials compare the signature on the January withdrawal slip to the signature card Wise signed when the account was opened. The signatures closely resembled one another. Wise continued to assert throughout the bank's investigation that she had not withdrawn the money. Wise decided to consult an attorney in an effort to

2

find a remedy to her situation. The attorney retained a handwriting expert who reviewed the withdrawal slips from Wise's savings account and determined that the signature on the January withdrawal slip was not Wise's signature but a tracing of it from an earlier withdrawal slip. Wise did not inform the bank of this discovery and proceeded to file the present litigation.

After receiving notice that Wise had filed suit but before the Bank answered, counsel for Wise showed the Bank's counsel the report of Wise's handwriting expert. Thereafter, the Bank replaced the $1,500 wrongfully taken from Wise's account along with the interest the money would have accrued through the date of reimbursement. The Bank was granted summary judgment on Wise's claim for punitive damages. Aggrieved by this decision, Wise perfected this appeal.

*Wise v. Valley Bank*, 850 So. 2d 1177, 1178-79 (Miss. Ct. App. 2002).

¶4.     A divided Court of Appeals reversed the trial court's granting of summary judgment, finding that there were genuine issues of material fact to be determined by a jury.  The Court of Appeals remanded for trial on the issue of punitive damages.  We granted Valley Bank's petition for certiorari, and after considering the briefs of both parties and the amicus curiae brief of the Mississippi Bankers Association, we reverse the judgment of the Court of Appeals and affirm the trial court's judgment.

## STANDARD OF REVIEW

¶5.     Because the matter is before us on a summary judgment motion, we must review that decision de novo. *Yazoo Props. v. Katz & Besthoff No. 284, Inc.*, 644 So. 2d 429, 431 (Miss. 1994).  A Rule 56(b) motion for summary judgment should not be granted unless "no genuine issue of material fact exists." Miss. R. Civ. P. 56(b).  The moving party must be entitled to judgment as a matter of law and "the burden of demonstrating that there is no genuine issue of material fact falls on the party requesting the summary judgment." *Mozingo v. Scharf*, 828 So.2d 1246, 1249 (Miss. 2002) (citing *Short v. Columbus Rubber & Gasket Co.*, 535 So.2d 61, 63-64 (Miss. 1988)).  "The evidence is viewed in the light most

favorable to the non-moving party." ***Watts v. Tsang***, 828 So.2d 785, 791  (Miss. 2002) (quoting

***Conley v. Warren***, 797 So.2d 881, 882 (Miss. 2001) (citations omitted)).

## DISCUSSION

**I.      WHETHER SPECIAL JUSTICES SHOULD BE APPOINTED AND/OR CHOSEN TO PRESIDE IN THE PLACE OF CHIEF JUSTICE PITTMAN AND JUSTICE DIAZ.**

¶6.     Very recently, this same issue was before us in ***Hewes v. Langston***, 853 So. 2d 1237, 1242-44

(Miss. 2003).  In that opinion, Justice Cobb, writing for the Court, very thoroughly explained our position

on the subject:

> Today we reiterate the long standing application of Section 165. The appointment of a special justice to this Court is appropriate where the Court lacks a quorum and where the parties are unable to agree in the selection of special justices to hear a case. However, so long as the Court has a quorum to conduct business, such an appointment is not authorized by our Constitution.

***Id***. at 1243.  Here, there is a quorum of the Court participating in this case.  Therefore, we find that no

special justice should be appointed or chosen to replace either Chief Justice Pittman or Justice Diaz who

are not participating in this decision.

**II.     WHETHER AN EVENLY DIVIDED SUPREME COURT MUST AFFIRM THE TRIAL COURT'S ORDER OR AFFIRM THE COURT OF APPEALS ORDER REVERSING AND REMANDING THE TRIAL COURT'S GRANT OF VALLEY BANK'S MOTION FOR SUMMARY JUDGMENT.**

¶7.     Although this Court is not evenly divided as to the issues presented by this case, we address this

issue to clarify our position.

¶8.     Valley Bank argues that when this Court is evenly divided, the order of the trial court must be

affirmed, despite the Court of Appeals having initially reviewed the appeal and found for reversal and

remand of the trial court's order.  However, we have made it clear that when this Court is divided evenly,

4

we will affirm the order which we are called upon to review. ***Rockett Steel Works v. McIntyre***, 15 So.2d 624, 624-25 (Miss. 1943); ***Jacobs v. Bank of Winona***, 190 Miss. 584, 1 So.2d 235, 235-36 (1941); ***Robertson v. Miss. Valley Co.***, 120 Miss. 159, 162, 81 So.799, 801 (1919); ***Brewer v. Crum***, 111 Miss. 871, 871, 72 So. 700, 700-01 (1916). Even the early opinions from the United States Supreme Court regarding the affirmance of a lower court's order do not speak to the affirmation of the per se "trial court," but of the lower court's order which it is reviewing upon appeal. ***Robertson***, 81 So. at 801-07 (Stevens, J., dissenting) (citing ***Hertz v. Woodman***, 218 U.S. 205, 30 S.Ct. 621, 54 L.Ed. 1001 (1910); ***Hartman v. Greenhow***, 102 U.S. (12 Otto) 672, 26 L.Ed. 271 (1880); ***Durrant v. Essex Co.***, 74 U.S. 107, 19 L.Ed. 154 (1868)); ***Etting v. Bank of United States***, 24 U.S. (11 Wheat.) 59, 6 L.Ed. 419 (1826).

¶9.     When this Court is evenly divided, it must affirm the judgment of the court from which the appeal is taken, even if that judgment is from the Court of Appeals. There is a long standing history in this regard. Other states have historically done the same. In ***Tate v. Christy***, 454 S.E.2d 242 (N.C. 1995), the North Carolina Supreme Court held that the decision of the Court of Appeals would be left undisturbed where the participating members of the Supreme Court were evenly divided as to affirmance or reversal. In ***Pierce v. Pierce***, 767 P. 2d 292 (Kan.1989), the Kansas Court of Appeals affirmed the trial court's holding. On review by the Kansas Supreme Court, the justices were evenly divided; therefore, the court affirmed the Court of Appeals, which had affirmed the district court judgment. In ***Getschow v. Commonwealth Edison Co.***, 459 N.E. 2d 1332 (Ill. 1984), the Illinois Supreme Court ruled that where it was evenly divided on a portion of the judgment, the Appellate Court's judgment would stand. In ***Christensen v. Epley***, 601 P.2d 1216 (Or. 1979), the Oregon Supreme Court was evenly divided on

one issue of the case, which had been heard by the Court of Appeals; therefore, the decision by the Court of Appeals on that one issue was affirmed. In *Benson v. First Trust & Savings Bank*, 145 So. 182 (Fla. 1932), the justices of the Florida Supreme Court on second rehearing were equally divided; therefore, the Supreme Court's judgment on the first rehearing was sustained.

¶10. We hold that when this Court is evenly divided, the order or judgment of the court from which the appeal is taken must be affirmed.

### III. WHETHER THERE WAS A RELATIONSHIP OF TRUST BETWEEN WISE AND VALLEY BANK.

¶11. The relationship between a bank and its depositor is simply one of debtor and creditor. *Deposit Guar. Nat'l Bank v. B.N. Simrall & Son, Inc*., 524 So. 2d 295, 300 (Miss. 1987). The bank agrees to repay the debt shown by the balance in the depositor's account by disbursing funds according to the terms of the deposit agreement. The Court of Appeals clearly yet erroneously stated "[t]he bank was in a relationship of trust with Wise . . ." *Wise*, 850 So. 2d at 1180. This is not merely a harmless misstatement of the duty owed by Valley Bank, but rather is in direct conflict with previous decisions of this Court. "The relationship between a bank and a depositor, without an agreement to the contrary, is simply one of debtor and creditor, and a deposit is not, ordinarily, a trust fund." *Deposit Guar. Bank & Trust Co. v. Merchants' Bank & Trust Co.*, 171 Miss. 553, 158 So. 136, 137 (1934) (citing *Moreland v. People's Bank of Waynesboro*, 114 Miss. 203, 263, 74 So. 828 (1917)). Furthermore, we have found that the relationship between a bank and its depositor is generally not a fiduciary one. *Merchants & Planters Bank of Raymond v. Williamson*, 691 So. 2d 398, 403 (Miss. 1997). Therefore, Valley Bank did not owe any fiduciary duty to Wise.

6

**IV.    WHETHER WISE HAS MET THE THRESHOLD SHOWING OF EGREGIOUS CONDUCT NECESSARY TO SUBMIT THE ISSUE OF PUNITIVE DAMAGES TO A JURY.**

¶12.    If Wise is entitled to pursue a punitive damage claim in the present case, it must be based on evidence of both a breach of the deposit contract and a showing that breach was so egregious as to amount to an independent tort. Punitive damages are permissible for wrongs that "import insult, fraud or oppression and not merely injuries but injuries inflicted in the spirit of wanton disregard for the rights of others." *First Nat'l Bank v. Langley,* 314 So. 2d 324, 339 (Miss. 1975) (citation omitted). "In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice, or gross negligence, evincing ruthless disregard for the rights of others." *Id*. The trial court concluded the evidence would not support a punitive damage claim, and we agree.

¶13.    There is no dispute the bank violated the terms of its debtor/creditor contract with Wise when it paid $1,500 based on a forged withdrawal slip. There is also no question that a bank teller forged the withdrawal slip and claimed during an interview by the bank manager that "she recalled Wise making the withdrawal." The Court of Appeals make much ado about allegations of a supposed video. Wise claimed she learned of the video from the bank manager; however, the manager denied advising Wise of any video's existence. In fact, there was no video.

¶14.    The bank conducted a thorough investigation including the comparison of the signatures with Wise's signature card on file at the bank's operation center in Greenwood. Wise's own deposition indicates that bank officials, Wise, and Wise's daughter all agreed after the comparison that the signature "appeared to be Wise's." Wise continued however to maintain she had not withdrawn the money from her account. The bank continued to investigate by interviewing all tellers including the one who forged the withdrawal slip. It conducted a joint meeting at corporate headquarters in Greenwood and attempted to ascertain

7

whether the bank had a copy of a videotape of the supposed transaction which occurred at the Shelby branch. The bank also conducted a six-month review of the bank statements of all personnel that had worked at the bank on the day of the incident. Nothing was uncovered by the bank which would have led the bank to conclude that Wise's signature was forged. The bank had given the original withdrawal slip back to Wise in her December 24, 1996, bank statement from which Wise's signature had been traced and which was ultimately used by her expert to finally discover the forgery. It is equally clear that the forgery was so good that neither Wise's attorney nor bank officials could determine the withdrawal document was a forgery. In fact, it ultimately took a handwriting expert to make that determination. Rather than advise the bank immediately that the document was indeed a forgery, Wise's attorney waited some two months and then filed suit. This was the bank's first knowledge that the withdrawal slip was in fact a forgery. The sole obligation of the bank, absent bad faith in its handling of the matter, was to make restitution. Miss. Code Ann. § 75-4-103 (Rev. 2002). Restitution was immediately made by the bank upon learning of the forgery. The bank did all that it could do to ascertain what actually occurred concerning this incident. There was no bad faith by the bank. Thus, this is not a punitive damages case.

¶15.    Absent behavior described above which supports punitive damages, no such claim could be made. Miss. Code Ann. § 11-1-65(1)(a) (Rev. 2002) will only allow for punitive damages where a plaintiff shows by clear and convincing evidence actual malice, gross negligence evidencing a willful, wanton, or reckless disregard for the safety of others, or the commission of actual fraud. "In order for punitive damages to be awarded, the plaintiff must demonstrate a wilful or malicious wrong, or the gross, reckless disregard for the rights of others. Punitive damages are only appropriate in the most egregious cases. . . ." *Paracelsus Health Care Corp. v. Willard,* 754 So. 2d 437, 442 (Miss. 1999) (citations omitted). The totality of the circumstances and the aggregate conduct of the defendant must be examined before punitive damages

8

are appropriate. *Id.* *See also* *Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc.*, 759 So. 2d 1203, 1215 (Miss. 2000); *Ross-King-Walker, Inc. v. Henson*, 672 So. 2d 1188, 1191 (Miss. 1996). The act complained of here was committed solely by a single bank teller. The bank's investigation of the matter was certainly complete, thorough and proper. There is also the requirement that there must be ruthless disregard for the rights of others in order to remove the case from the ordinary rule. *Fowler Butane Gas Co. v Varner*, 244 Miss. 130, 141 So. 2d 226, 233 (1962). *See also* *Fedders Corp. v. Boatright*, 493 So. 2d 301, 311 (Miss. 1986). Considering the totality of the circumstances, the bank's conduct indicates a thorough attempt to satisfactorily resolve the matter. This Court has only allowed punitive damages where the facts are highly unusual and the cases extreme. *South Cent. Bell v. Epps*, 509 So. 2d 886, 892 (Miss. 1987). *See also* *Aqua-Culture Techs., Ltd. v. Holly*, 677 So. 2d 171, 184 (Miss. 1996).

¶16.     Here, the forgery of Wise's withdrawal slip was the act of a single bank employee. There is no indication in this record of any prior notice to the bank of problems with the bank teller involved. Valley Bank acted properly in attempting to thoroughly investigate this matter and determine the truth concerning the funds missing from Wise's account. It took a handwriting expert to ultimately determine the truth. Considering the totality of the circumstances and the bank's overall aggregate conduct, the bank acted properly in attempting to get to the truth as to what happened here.

¶17.     The right to have a jury consider punitive damages is dependent upon something more than the plaintiff's bare demand. Whether the defendant's misconduct is sufficiently egregious or offensive as to warrant submission to the jury on the question of punitive damages lies initially with the trial court. *Id*. By granting Valley Bank's request for summary judgment, the trial court concluded that, even if all of Wise's allegations about the bank's conduct were accepted as true, the bank's actions were not so egregious as

9

to amount to an independent tort. The trial judge concluded correctly, that the evidence, even viewed in the light most favorable to Wise, did not demonstrate the willful, insulting, or abusive conduct that would warrant allowing a jury to consider the possibility of punitive damages. Wise has not met the threshold showing of egregious conduct necessary to submit the issue of punitive damages to a jury. The Court of Appeals erred in concluding otherwise.

## CONCLUSION

¶18. We find that no special justice should be appointed or chosen to replace either Chief Justice Pittman or Justice Diaz, who are not participating in this decision, that an evenly divided Supreme Court must affirm the judgment of the court from which the appeal is taken, that there was not a relationship of trust between Valley Bank and Wise, and that Wise has not met the threshold showing of egregious conduct necessary to submit the issue of punitive damages to a jury. We reverse the judgment of the Court of Appeals and affirm the trial court's judgment.

¶19. **THE COURT OF APPEALS' JUDGMENT IS REVERSED, AND THE TRIAL COURT'S JUDGMENT IS AFFIRMED.**

**WALLER, COBB AND CARLSON, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY, J. PITTMAN, C.J., AND DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶20. I disagree with both the decision reached by the majority in this case and the manner in which it was reached. Special appointments should have been made in this matter in accordance with our state constitution. In addition, I disagree with the majority's assertion that the relationship between a bank and its depositors is not one of trust and its finding as to the issue of punitive damages. Accordingly, I dissent.

## A. WHETHER A SPECIAL JUDGE SHOULD BE APPOINTED AND/OR CHOSEN TO PRESIDE IN THE PLACE OF CHIEF JUSTICE PITTMAN AND JUSTICE DIAZ.

¶21. In this case, there has been a proper request to the Governor that judges are appointed in the place of Chief Justice Pittman and Justice Diaz who are not participating. In addition, I cannot think of a more appropriate situation for such an appointment than in this case, where originally there was an evenly divided court. Article 6, Section 165 of the Mississippi Constitution of 1890 states:

> Whenever any judge of the Supreme Court... shall, for any reason, be unable or disqualified to preside at any term of court, or in any case where the attorneys engaged therein shall not agree upon a member of the bar to preside in his place, the governor may commission another, or others, of law knowledge, to preside at such term or during such disability or disqualification in the place of the judge or judges so disqualified.

Appointments should have been made in this case, and the majority errs in holding otherwise.

## B. RELATIONSHIP BETWEEN BANKS AND DEPOSITORS

¶22. The majority characterizes the relationship between the parties in this case as one of creditor and debtor and not necessarily as one of trust. I have long disagreed with this portrayal of the dynamic between a bank and its customer and take this opportunity to do so once more.

¶23. To simply characterize the relationship as creditor-debtor as this majority and a few before it have done fails to take into account one half of the equation. Banks will most assuredly describe the average deposit as a type of loan. The way they may see it, the depositor is loaning them the money for an undetermined period of time in exchange for the payment of interest. This sure sounds like a loan.

¶24. However, to define the relationship in such mechanical terms clearly dismisses the attitude of many if not most all depositors. When the average citizen deposits his or her hard earned money into a savings or checking account, he or she is trusting the bank to safeguard their money. These depositors place their trust in banks to provide more security to their savings than is guaranteed by a piggy bank, sock drawer,

11

or clever hiding spot underneath the mattress. While the banks may choose to have a different perception of this relationship, the average depositor is clearly placing the bank in a position of trust.

### C. SUMMARY JUDGMENT ON THE ISSUE OF PUNITIVE DAMAGES

¶25. The majority affirms the trial court's grant of summary judgment in favor of Valley Bank on the issue of punitive damages. The Court of Appeals found this decision in error and reversed and remanded the case to the trial court for a trial on the issue of punitive damages. The Court of Appeals had it right.

¶26. The foundation of the relationship between the bank and its customer is the bank's agreement to pay out the customer's money according to the customer's order, or as the Mississippi Bankers Association would have it, "simply an arms-length contractual relationship." This Court has held that to be eligible for damages in breach of contract cases, a plaintiff must show that the breach resulted from an intentional wrong or that the defendant acted with malice or gross/reckless disregard for the rights of others. *Paracelsus Health Care Corp. v. Willard*, 754 So. 2d 437, 442 (¶27) (Miss. 1999) (citing *Am. Funeral Assur. Co. v. Hubbs*, 700 So.2d 283, 285 (Miss. 1997)). Additionally, "[p]unitive damages may be imposed for breach of contract where such breach is attended by intentional wrong, insult, abuse, or such gross negligence as amounts to an independent tort." *Tideway Oil Programs, Inc. v. Serio*, 431 So. 2d 454, 465-66 (Miss. 1983).

¶27. Wise and her daughter allege that Valley Bank's branch manager informed them that the bank had a videotape that would show Wise withdrew the $1,500 in question on January 23, 1997. The two also allege that the branch manager told them he could show them the videotape in three days time if they requested. Wise testified that she was later informed by the branch manager that the videotape had been destroyed. Apparently, pursuant to Valley Bank's policy, the videotape for that date was destroyed prior

to Wise's discovery of the money missing from her account. The branch manager denies having made those statements to Wise and her daughter.

¶28. As this Court has stated, "[i]ssues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter and another says the opposite." *City of Jackson v. Sutton,* 797 So. 2d 977, 979 (Miss. 2001). Upon a motion for summary judgment, the evidence is viewed "in the light most favorable to the party against whom the motion has been made." *Id.* Since Valley Bank was the moving party, the Court of Appeals correctly afforded Wise the benefit of the doubt in determining whether a genuine issue of material fact existed for the jury to decide.

¶29. "The jury should be allowed to consider the issue of punitive damages if the trial judge determined under the totality of the circumstances and in light of defendant's aggregate conduct, that a reasonable, hypothetical juror could have identified either malice or gross disregard to the rights of others." *Paracelsus Health Care Corp. v. Willard*, 754 So. 2d at 442 (¶20). The Court of Appeals opined that if Wise's statements are taken as true, then the manager's statements regarding the video recording take on the appearance of an intentional, material misrepresentation and indicate that Valley Bank did not act in good faith throughout the course of its investigation, and I agree.

¶30. Because I would affirm the Court of Appeals' judgment, I dissent.

**EASLEY, J., JOINS THIS OPINION.**