66 So.3d 729 (2011)
Kelsey RUSHING and Yumeka Rushing, Appellants
v.
TRUSTMARK NATIONAL BANK, Appellee.
No. 2010-CA-00037-COA.
Court of Appeals of Mississippi.
July 19, 2011.
*730 Matthew Ivan Hetzel, Jackson, Tommie Lee Stingley Jr., attorneys for appellants.
Christopher A. Shapley, William "Trey" Jones III, Christopher Ray Fontan, Jackson, attorneys for appellee.
EN BANC.
MYERS, J., for the Court:
¶ 1. Kelsey and Yumeka Rushing sued Trustmark National Bank to recover damages on the grounds of negligence, breach of fiduciary duty, breach of contract, and detrimental reliance in connection with a construction-loan agreement the Rushings had entered into with the bank for a new home. The Hinds County Circuit Court granted Trustmark's motion for summary judgment on the basis that the Rushings had waived any causes of action they might have had against Trustmark when the they continued to renew the existing construction loan with Trustmark, despite their awareness of the causes of action they intended to pursue against the bank. Finding no error with the circuit court's application of Mississippi's waiver rule, we affirm the court's judgment.

FACTS
¶ 2. In 2002, the Rushings purchased a subdivision lot in Madison County, Mississippi, and hired Louie and John Hale, of Hale Construction, to construct a house on the property. The Rushings were unable to obtain financing for the project until 2004 when they contacted Trustmark through Carl Sandberg, Trustmark's Vice President of Residential Lending.
¶ 3. The Rushings closed their construction loan with Trustmark on December 24, 2004. At the closing, the Rushings and the Hales executed a building contract, and the Rushings executed a written loan agreement with Trustmark.
¶ 4. As authorized by the Rushings, the construction loan operated as a line of credit with a set amount available at Trustmark, from which various amounts could be drawn off by the Hales to pay for work as construction of the house progressed. The Hales began building the house in January 2005 and continued construction on the residence until May 2005. As work progressed on the construction of the house, a total of five draws were made to the Hales from the Rushings' line of credit.
¶ 5. On May 31, 2005, the Rushings were contacted by the subdivision's homeowners association about problems with the construction of the home. Concerned, the Rushings paid for Madison County inspectors to conduct an inspection of the project. The inspectors thereafter informed the Rushings that unless major changes were made, construction would ultimately fail county inspection. The Rushings halted construction and contacted Trustmark, after which the bank did not remit any further draws to the Hales.
*731 ¶ 6. On June 6, 2005, the Rushings met with Sandberg to discuss their construction loan. The Rushings renewed their original construction loan with Trustmark and borrowed additional money from the bank between June 2005 and April 2006 to complete the construction of their home. Meanwhile, the Rushings had terminated their relationship with the Hales and hired Slaughter Construction, which corrected the construction deficiencies performed by the Hales and completed construction of the new home in 2006. In May 2006, the Rushings paid off their construction loan with Trustmark after they obtained a permanent mortgage with another financial institution.
¶ 7. On May 8, 2009, the Rushings filed suit in the Hinds County Circuit Court against Trustmark, Hale Construction, and Shumaker Properties,[1] alleging negligence, breach of fiduciary duty, fraud, civil conspiracy, breach of contract, and detrimental reliance.[2] In the complaint, the Rushings alleged that Trustmark failed to monitor, verify, and inspect Hale Construction's work before remitting draws to the builder. They claimed that Trustmark's actions forced them to incur an additional $200,000 of debt, and they sought $500,000 in compensatory damages and $1,000,000 in punitive damages as well as attorney's fees and other damages.
¶ 8. Trustmark and Shumaker Properties each filed their own separate answers. The Rushings were unable to locate John Hale to serve him with process. Louie Hale failed to answer the complaint, and a default judgment was entered against him.
¶ 9. The circuit court granted Trustmark's motion for summary judgment, certified in accordance with Rule 54(b) of the Mississippi Rules of Civil Procedure as a final judgment, based on the finding that the Rushings had "waived any potential claim they may have had against Trustmark, when they continued to renew their loan agreement with Trustmark, despite their awareness of the cause(s) of action they intended to pursue against Trustmark." Relying on Citizens National Bank v. Waltman, 344 So.2d 725 (Miss. 1977) and other similar cases, the circuit court reasoned that waiver operated in this case "pursuant to longstanding Mississippi law." This appeal followed.
¶ 10. The Rushings raise the same issues they presented to the circuit court in their opposition to Trustmark's motion for summary judgment. Because we find that the circuit court did not err on the principal issue of granting summary judgment based on the waiver doctrine, we limit our discussion to that dispositive issue.

STANDARD OF REVIEW
¶ 11. This Court reviews a trial court's decision to grant or deny summary judgment de novo. Owens v. Thomae, 904 So.2d 207, 208 (¶ 7) (Miss.Ct.App.2005). Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c).

DISCUSSION
¶ 12. The Rushings argue that the circuit court erred in applying the waiver doctrine to the facts in this case, as the rule has only been applied in cases where the plaintiffs or debtors were alleging causes of actions as either defenses to paying the notes for permanent financing *732 or as reactions to collection actions filed by lenders. Contrarily, Trustmark argues that the waiver doctrine, as applied by the circuit court, stands for the proposition that: where a borrower has knowledge of the facts giving rise to a claim of wrongdoing against a lender in relation to a contract, the borrower cannot affirm the contract and continue to accept the benefits of the contract and then complain about the alleged wrongdoing at a later date.
¶ 13. In Waltman, the Mississippi Supreme Court concisely and emphatically stated the rule of law which governs this case as follows:
Our law is clear that the execution of a renewal note with full knowledge of the facts constituting a defense to the original note waives that defense as to the renewal. Justice Griffith explained this doctrine in Gay v. First Nat'l Bank, 172 Miss. 681, 686, 160 So. 904, 905 (1935)[:]
Where a party has full knowledge of all defenses to a note and executes a new note payable at a future date, he then waives all his defenses and becomes obligated to pay the new note. Tallahatchie Home Bank v. Aldridge, 169 Miss. 597, 604, 153 So. 818 [(1934)]. And where the facts and circumstances are such that a reasonably prudent person, judged by normal standards, would or should have made inquiry, which inquiry, if reasonably pursued and with ordinary diligence, would have led to full knowledge of his defenses, then it becomes the duty of the party or parties to make such inquiry or investigation before executing the renewal note, and if he fail[s] to do so[,] he is as much bound as if he had actual knowledge of all the facts.
Waltman, 344 So.2d at 728.
¶ 14. In applying the rule to that case, the Waltman court stated:
We need not decide whether the jury was properly instructed, nor whether it could properly accept the version of the facts offered by Mrs. [Evelyn] Waltman. Nor need we decide whether, accepting Mrs. Waltman's version of the facts as true, the Bank committed any actionable wrong, either fraudulently or negligently. We have reached the inescapable conclusion that by executing the last renewal note on August 8, 1973, with full knowledge of the surrounding circumstances, Mrs. Waltman waived any cause of action she might have had against the Bank based on the earlier notes. Therefore, the defendant's peremptory instructions should have been granted.
Id. at 727.
¶ 15. The Rushings' argument(s) on appeal notwithstanding, we do not find the lender/borrower relationship between them and Trustmark to be any different from those found in the cases of Waltman and Gay. The Rushings, who are both attorneys, admitted in their respective depositions that prior to renewing the construction loan with Trustmark (three additional times), they were aware of Trustmark's alleged responsibility for the construction problems they had with Hale Construction, and they intended to sue Trustmark for its alleged actionable wrong(s) once their new builder completed construction on their home. That being the case, the Rushings waived any right of action they might have had against Trustmark. Waltman, 344 So.2d at 727; see also Holland v. Peoples Bank & Trust Co., 3 So.3d 94, 103 (¶ 22) (Miss. 2008); Austin Dev. Co. v. Bank of Meridian, 569 So.2d 1209, 1212-13 (Miss.1990); Knox v. BancorpSouth Bank, 37 So.3d 1257, 1261-62 (¶ 14) (Miss.Ct.App.2010). Therefore, we affirm the circuit court's grant of summary judgment in favor of Trustmark.
*733 ¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, P.J., AND RUSSELL, J. BARNES, J., NOT PARTICIPATING.
CARLTON, J., dissenting:
¶ 17. I respectfully dissent from the majority's opinion. The majority finds that Kelsey and Yumeka Rushing waived any claims they possessed against Trustmark National Bank when they renewed their existing, or original, construction loan with Trustmark while aware of potential causes of action they intended to pursue against the bank. The majority bases this finding on the waiver doctrine as set forth in Citizens National Bank v. Waltman, 344 So.2d 725 (Miss.1977).[3] A review of Waltman reveals that Waltman held that the execution of a renewal note with knowledge of the facts constituting a defense to the "original" note waived any defenses to the renewal. Id. at 728. However, no default exists in today's case as to the debt incurred by either the renewal or the original note. In fact, a review of the record shows that the Rushings satisfied their debt owed to Trustmark in full in May 2006 after obtaining long-term financing from another financial institution. Further, the record shows that nothing in the Rushings' loan agreement with Trustmark, or in the renewal of that agreement, waived Trustmark's obligation to perform in good faith.[4] Accordingly, I find that the Rushings presented questions of material fact as to whether Trustmark breached its duty of good faith by negligently managing the Rushings' construction loan.
¶ 18. I submit that the renewal of a loan has the effect of a new promise to pay the original debt with new statute of limitations and new duties until expiration of the time applicable to the new promise to pay. Further, "[t]he law of Mississippi imposes an obligation of good faith and fundamental fairness in the performance of every contract[.] [T]his requirement is so pronounced that courts have the power to refuse to enforce any contract in order to avoid an unconscionable result." Sawyers v. Herrin-Gear Chevrolet Co., 26 So.3d 1026, 1034-35 (¶ 21) (Miss.2010). See Miss.Code Ann. § 75-2-302 (Rev.2002).
¶ 19. As stated, in the present case, the Rushings satisfied the payment of the debt of the original loan and the additional monies received upon renewal of the loan. Hence, the Rushings assert no defenses to the payment of that note or to any note in default. The Rushings, instead, seek damages allegedly resulting from the negligent handling of their loan. No terms or conditions of their loan agreement allowed Trustmark to manage their loan in a negligent manner,[5] or waived Trustmark's obligation to perform in good faith.[6] Therefore, *734 the waiver doctrine articulated in Waltman fails to apply to the tort claims asserted by the Rushings in this case.[7]
¶ 20. The obligation of good faith imposed by law into every contract is not subject to waiver.[8] Accordingly, I submit that a contract term asserting to waive the obligation of good faith would be considered void as an unconscionable term. In Sawyers, 26 So.3d at 1034-35 (¶ 21), the Mississippi Supreme Court stated:
Substantive unconscionability is proven by oppressive contract terms such that "there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach." [Bank of Indiana, Nat. Ass'n v.] Holyfield, 476 F.Supp. 104,] 110 [ (S.D.Miss.1979) ].
....
"The law of Mississippi imposes an obligation of good faith and fundamental fairness[9] in the performance of every contract[.] [T]his requirement is so pronounced that courts have the power to refuse to enforce any contract in order to avoid an unconscionable result." Section 75-2-302 of the Mississippi Code provides: "If the court as a matter of law finds the contract to have been unconscionable it may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."
¶ 21. With respect to damages, I note that the Rushings obtained new long-term financing from a different financial institute. Section 75-4-103(e) (Rev.2002) provides that "[t]he measure of damages for failure to exercise ordinary care ... is the amount of the item reduced by an amount that could not have been realized by the exercise of ordinary care[,]" and if bad faith exists, damages include "any other damages the party suffered as a proximate consequence."[10]See also Wise v. Valley Bank, 861 So.2d 1029, 1033-35 (¶¶ 12-17) (Miss.2003) (discussing bad faith, damages, and a bank's duty to exercise care during the investigation of a customer's complaint of wrongful withdrawal).
*735 ¶ 22. In conclusion, no terms or conditions in the loan agreement in today's case waives or relieves Trustmark from its obligation to handle the administration of the Rushings' loan with good faith and ordinary care. Therefore, the Rushings' claims of negligence against Trustmark should have survived summary judgment since a question of fact existed as to whether Trustmark breached its duty of good faith in negligently handling[11] in its loan administration, i.e. in providing negligent or unauthorized draws[12] or payments[13] to Hale Construction,[14] resulting in damages to the Rushings.[15] Additionally, with respect to the Rushings' breach of fiduciary duty claim, a question of material fact existed as to whether the bank loan officer, Carl Sandberg, as an agent of the bank, created a fiduciary relationship by his representations with the Rushings, and, if so, whether Sandberg breached his fiduciary duty.[16]
¶ 23. Based on the foregoing reasons, I respectfully dissent from the majority's opinion.
IRVING, P.J., and RUSSELL, J., join this opinion.
NOTES
[1] The record indicates that Hale Construction was associated with Shumaker Properties; Hale Construction used the latter's Mississippi contractors' license for the project.
[2] The Rushings later dismissed their claims of fraud and civil conspiracy against Trustmark.
[3] The majority also cites to Gay v. First National Bank, 172 Miss. 681, 686, 160 So. 904, 905 (1935), for this same proposition.
[4] See generally Chimento v. Fuller, 965 So.2d 668, 673-74 (¶¶ 23-26) (Miss.2007) (citing Crane v. French, 38 Miss. 503, 531-32 (1860) (discussing the contractual waiver of legal rights, specifically the statute of limitations).
[5] I further note that nothing in the loan agreement reflects that the Rushings authorized the bank to remit draws directly to the contractor.
[6] See generally 1 Gerald L. Blanchard, Lender Liability: Law, Practice and Prevention § 7:04 (Supp.2001) (discussing negligent loan administration).
[7] See Miss.Code Ann. § 75-4-103(a) (Rev. 2002) (providing that "the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure").
[8] See Miss.Code Ann. § 75-4-103(a).
[9] In comparison, Mississippi statutes involving commercial transactions reflect similar policy in setting forth the UCC's objective of promoting certainty and predictability in loan transactions. See Miss.Code Ann. § 75-5-103 (Supp.2010). See also Union Planters, Nat'l Ass'n v. Rogers, 912 So.2d 116, 120-21 (¶ 13) (Miss.2005) (citing UCC § 4-406). These statutes adhere to the objective for certainty and predictability with respect to credit in requiring compliance with standard practices as set forth in Mississippi Code Annotated section 75-5-108(a) and (e) (Rev.2002). Additionally, Mississippi Code Annotated section 75-5-108(g) provides that "[i]f an undertaking constituting a letter of credit under Section 75-5-102(a)(10) contains nondocumentary conditions, an issuer shall disregard the nondocumentary conditions and treat them as if they were not stated." See Corporacion de Mercadeo Agricola v. Mellon Bank Int'l, 464 F.Supp. 88, 91 (S.D.N.Y.1978), aff'd, 608 F.2d 43 (2d Cir.1979) ("It is black letter law that the terms and conditions of a letter of credit must be strictly adhered to. There is no discretion in the bank to waive any of these requirements. The terms of the letter constitute an agreement between the purchaser and the bank.") (internal citations omitted).
[10] See generally Stanford Young, Mississippi Practice Series: Trial Handbook for Mississippi Lawyers § 32:19 (3d ed. Supp.2003) (discussing damages in breach-of-contract cases).
[11] No terms or conditions in the written loan agreement authorizes Trustmark or the loan officer involved to make payments, or draws, directly to the contractor. Rather, the loan agreement only reflects the loan to the customers, the Rushings. See Humphreys County v. Guy Jones, Jr. Const. Co., Inc., 910 So.2d 1129, 1132 (¶ 14) (Miss.Ct.App.2005) (finding that ambiguous contract terms and conditions are construed against the drafter). See also Miss.Code Ann. § 75-5-108(g) (providing an issuer must disregard non-documented conditions involving credit falling under that statute).
[12] See Miss.Code Ann. § 75-3-104(e) (Rev. 2002) ("An instrument is a `note' if it is a promise and is a `draft' if it is an order.").
[13] See Miss.Code Ann. § 75-4-102(b) (Rev. 2002) ("The liability of a bank for action or non-action with respect to an item handled by it for purposes of presentment, payment, or collection is governed by the law of the place where the bank is located.").
[14] A review of the loan agreement in the case at hand shows no privity of contract existed between Hale Construction and Trustmark. See United Plumbing & Heating Co., Inc. v. AmSouth Bank, 30 So.3d 343, 347 (¶ 13) (Miss.Ct.App.2009).
[15] See Miss.Code Ann. § 75-4-103.
[16] While I acknowledge that the relationship between a bank and its depositor is generally not a fiduciary one, see Wise, 861 So.2d at 1033 (¶ 11), I assert that a question exists as to whether Sandberg, through his own misrepresentations created a fiduciary duty with the Rushings. As an agent of Trustmark, his representations would bind Trustmark. In discussing an agent's authority, this Court has provided:

Under general Mississippi law, an agent's authority may be either actual or apparent. Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1180 (Miss.1990). The issue of actual authority need not be reached if the agent had apparent authority. Baxter Porter & Sons Well Servicing Co., Inc. v. Venture Oil Corp., 488 So.2d 793, 796 (Miss.1986) (citing McPherson v. McLendon, 221 So.2d 75, 79 (1969)). "Apparent authority exists when a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent that the agent has the power he is assumed to have." Andrew Jackson, 566 So.2d at 1180 (citing Ford v. Lamar Life Ins. Co., 513 So.2d 880, 888 (Miss.1987)).
Delta Chem. & Petroleum, Inc. v. Citizens Bank of Byhalia, Miss., 790 So.2d 862, 874 (¶ 37) (Miss.Ct.App.2001).