344 So.2d 725 (1977)
CITIZENS NATIONAL BANK
v.
Mrs. Evelyn WALTMAN. 2 opinions attached
No. 49001.
Supreme Court of Mississippi.
March 9, 1977.
Rehearing Denied April 27, 1977.
Cox & Dunn, William H. Cox, Jr., Vardaman S. Dunn, Jackson, for appellant.
Heber A. Ladner, Jr., Pittman & Nobles, Crymes G. Pittman, Jackson, for appellee.
EN BANC.
*726 WALKER, Justice, for the Court:
Mrs. Evelyn Waltman instituted this action in the Circuit Court of the First Judicial District of Hinds County, Mississippi, seeking to recover damages arising as a result of alleged fraud and negligence in connection with a series of loan transactions involving her, her late husband, Billy J. Mann, and the defendant, Citizens National Bank. The jury returned a verdict for Mrs. Waltman in the amount of $102,000, but the trial judge ordered a remittitur, accepted by the plaintiff, in the amount of $32,000. The Bank's motion for judgment notwithstanding the verdict or, in the alternative, a new trial having been overruled, it brings its appeal to this Court.
Mrs. Waltman, a widow and a business woman, married Billy J. Mann on January 31, 1971. On March 1, 1971, she and her husband executed a note in the amount of $22,445.40 to the Citizens National Bank, pledging as collateral a 40 acre farm in Copiah County owned by Mrs. Waltman and several shares of stock, which later proved to be worthless, owned by her husband. The only real factual dispute in this case involves the circumstances of that transaction. Mrs. Waltman testified that her husband had called her late on the afternoon of March 1 to inform her that he had negotiated a business loan but that her collateral was needed before the Bank could close the deal. She resisted this suggestion, but the loan officer, Bobby Pace, assured her that all was in order. When she arrived at the Bank, both the note and the deed of trust had already been prepared, the description of her property having already been typed into the deed of trust. She did not wish to mortgage her property, but Pace assured her that her farm would serve only as interim security for a few days until her husband's stock arrived from Shreveport. Relying on this assurance, she signed the note and the deed of trust. Pace, of course, substantially contradicted this testimony, but, because of our disposition of the case, it is not necessary to review his testimony *727 in any detail. It seems to be undisputed that the proceeds of the loan were used to satisfy Mr. Mann's indebtedness to a Shreveport Bank, as well as two earlier loans by Citizens National to Mr. Mann and an $800 loan to Mrs. Waltman. Mrs. Waltman claimed that the Bank never informed her of the existence of these prior loans to Mann, which her collateral was used to secure. However, these prior loans do appear on the loan disbursement sheet executed in conjunction with the disclosure statement signed by Mrs. Waltman. After satisfying these debts, Mr. Mann and Mrs. Waltman received only $10,000 in cash for their $22,000 note.
Apart from this initial conflict in testimony, the facts in the case seem hardly to be in dispute. Mr. Mann incurred further debts with the Bank, including a note executed on September 22, 1971, in the amount of $2,682. By the time of that loan, the March 1 loan had become delinquent, and Mr. Mann and Mrs. Waltman had separated because of his financial irresponsibilities. By August 23 the Bank had discovered that the stock pledged by Mr. Mann had no value whatsoever. Mr. William White, the vice-president of the Bank, called Mrs. Waltman and told her that she would have to bring the loan up-to-date. The Bank required her to put up her 89 shares of General Motors Stock as collateral for the original debt on September 10, 1971. On June 15, 1972, the Bank sold 20 shares of that stock to bring the loan current. The note again became delinquent, and Mrs. Waltman executed another note on November 24, 1972, in the amount of $17,552.62. The renewal was supported by the same collateral and was executed in her name alone, retiring the original note. Whereas the original note had been payable in 60 monthly installments, this note was to be payable in full within six months. Furthermore, as a condition of this renewal, Mrs. Waltman was required to accept responsibility for the September 22, 1971, loan to Mr. Mann, a loan that the Bank had made with full knowledge that Mr. Mann's earlier loan had become delinquent. This note also became delinquent, and Mrs. Waltman executed a final note, in the amount of $17,552.62, on August 8, 1973, payable on September 7, 1973. At the time of this last renewal, Mrs. Waltman had been divorced from Mr. Mann since July 18, 1973. When this final note became delinquent, the Bank foreclosed the mortgage on Mrs. Waltman's farm on December 26, 1973, sold the remaining General Motors stock and retired the indebtedness.
In her amended declaration, Mrs. Waltman sought recovery for, inter alia, the tort of fraud and deceit, arising from the Bank's alleged misrepresentation that her farm was only to be used for a few days as interim security for the original loan.
Under her second count, she alleged that the Bank tortiously coerced her into assuming responsibility for an independent debt of Mr. Mann as a condition for renewing the original debt.
We need not decide whether the jury was properly instructed, nor whether it could properly accept the version of the facts offered by Mrs. Waltman. Nor need we decide whether, accepting Mrs. Waltman's version of the facts as true, the Bank committed any actionable wrong, either fraudulently or negligently. We have reached the inescapable conclusion that by executing the last renewal note on August 8, 1973, with full knowledge of the surrounding circumstances, Mrs. Waltman waived any cause of action she might have had against the Bank based on the earlier notes. Therefore, the defendant's peremptory instructions should have been granted. Although the Bank in its answer did not use the term waiver, the defense of waiver is amply pled in its answer to Count II, Paragraph 10.
At the time of the last renewal, Mrs. Waltman was well aware of the facts constituting the alleged fraud. She knew that the Bank's alleged assurance that her land was needed only as interim security had been proven false. She knew that Mr. Mann's stock, which the Bank allegedly had assured her was valuable, had proven worthless. She knew or was charged with *728 the knowledge that the Bank had used the original loan to pay off earlier debts of Mr. Mann. She knew that the Bank had required her to assume his later debts in the renewal of November 24, 1972.
Our law is clear that the execution of a renewal note with full knowledge of the facts constituting a defense to the original note waives that defense as to the renewal. Justice Griffith explained this doctrine in Gay v. First Nat'l Bank, 172 Miss. 681, 686, 160 So. 904, 905 (1935);
Where a party has full knowledge of all defenses to a note and executes a new note payable at a future date, he then waives all his defenses and becomes obligated to pay the new note. Tallahatchie Home Bank v. Aldridge, 169 Miss. 597, 604, 153 So. 818. And where the facts and circumstances are such that a reasonably prudent person, judged by normal standards, would or should have made inquiry, which inquiry, if reasonably pursued and with ordinary diligence, would have led to full knowledge of his defenses, then it becomes the duty of the party or parties to make such inquiry or investigation before executing the renewal note, and if he fail to do so he is as much bound as if he had actual knowledge of all the facts.
Mrs. Waltman, in her brief, neither distinguishes Gay nor suggests that it should be overruled. We find it controlling here.
On the evidence here presented, no judge or jury could reach any conclusion other than that Mrs. Waltman had full knowledge of all the facts at the time she executed the final renewal on August 8, 1973. That being the case, it follows as a matter of law that she waived any right of action she might have had against the Bank. Therefore, the judgment of the circuit court must be reversed, and judgment rendered here for the appellant.
REVERSED AND RENDERED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.
LEE, J., dissents.
LEE, Justice, dissenting:

I.
I distinguish Gay v. First National Bank, 172 Miss. 681, 160 So. 904 (1935) from the case under consideration.
On August 7, 1929, Gay endorsed a six-hundred-dollar ($600.00) note, the money obtained therefrom to be used in the purchase of a tract of timber. He claimed there was an agreement with the bank and the maker of the note, as a consideration of endorsement, that the lumber coming from the sale of the timber would be invoiced through the bank and that forty percent (40%) of the net proceeds would be deducted and credited to a stumpage account for payment of the note. The bank contended the understanding was that funds in the stumpage account should be credited to any debt of maker to the bank. The stumpage account was closed in March, 1930, at which time sufficient funds had been collected to retire the note. There were numerous renewals of notes for the balance until March 25, 1933, when the last renewal was executed and suit was filed. Thus, for a period of three years, Gay knew that sufficient funds had been credited to the stumpage account for the payment of his note and did nothing about it.
In the present case, appellee executed a note and mortgage to appellant, Citizens National Bank, upon representation of the bank, that they were a temporary and interim transaction until the bank received collateral from her husband's bank in Shreveport. Appellee executed the renewals in order to extricate herself from the situation brought about by the bank, without gain to herself, and to her detriment in the loss of her land and stock.
Regardless of the distinguishing features, the rule in Gay is too antiquated and harsh, and should be modified or enlarged to harmonize with the better, more reasonable position of other states. I think that before it can be said appellee waived her cause of action (right) against the bank, she must (1) *729 have full knowledge of the fact that she had a cause of action, and (2) she intended to waive or relinquish that right.
"The question of outright waiver is one of intent, and it is essential to such waiver that the victim possess full knowledge of the fraud practiced upon him and that he intend to affirm the contract and abandon his right to recover damages for the loss resulting from the fraud." 37 Am.Jur.2d Fraud and Deceit § 386, at 523 (1968).
In Bowman v. Webster, 44 Wash.2d 667, 269 P.2d 960 (1954), the Court said:
"The one against whom the waiver is claimed must have actual or constructive knowledge of the existence of the right. He must intend to relinquish such right, advantage, or benefits; and his action must be inconsistent with any intention other than to waive them." 44 Wash.2d at 669, 269 P.2d at 961.
The better rule is that, unless the renewal gives the defrauded party something in addition to what he had before, such party has not waived his existing cause of action.
The Court, applying Iowa law, in United Forest Products Company v. Baxter, 452 F.2d 11 (8th Cir.1971), approved the rule stated in an instruction of the trial court as follows:
"In order for there to have been a waiver, it must be established that there was a material change in the agreement to the benefit of the plaintiff, and that the plaintiff at the time of such change had full knowledge of the facts constituting the fraud and of the damages resulting therefrom." 452 F.2d at 14, n. 1.
That Court cited cases from Iowa and California to the effect that a mere extension of time or change in the terms of payment does not constitute such a benefit as would waive the fraud. Other states have taken a similar position that the defrauded party must receive some benefit from the new agreement before the fraud is held to be waived. See Smith v. Tracy, 372 S.W.2d 925, 937 (Mo. 1963); Dorr v. Janssen, 233 Or. 505, 510, 378 P.2d 999, 1001 (1963).
I am of the opinion that before it can be held that appellee waived any right of action she had against the bank, (1) the question of whether she had full knowledge of the facts (a cause of action against the bank) should have been submitted to the jury, and (2) whether she intended to waive and relinquish the cause of action should have been submitted to the jury. Those were issues on the question of waiver, under the facts of this case, which were for determination by a jury and not by a court.

II.
The defense of waiver was not presented to the trial court. The answer did not plead waiver [See Appendix], there was no affirmative defense of waiver filed, and there was no instruction obtained presenting that question to the jury. Mississippi Code Annotated § 11-7-59(4) (1972) requires such a defense to be pleaded:
"(4) If the defendant desire to prove by way of defense in an action, any affirmative matter in avoidance, which by law may have been proved heretofore under special plea he shall set forth in his answer to the action such affirmative matter and incorporate such defense therein, otherwise such matter shall not be allowed to be proved at the trial; ..."
A defense not raised in the trial court may not be raised for the first time on appeal. Vinson v. Cooley, 54 So.2d 750, 751-52 (Miss. 1951). A defense not called to the attention of the trial court will not be considered by this Court on appeal. Jones v. Taylor, 156 Miss. 790, 126 So. 821 (1930).
I am of the opinion that this Court should not have considered the defense of waiver, upon which the case was decided, but, even so, that there was no waiver, and that the case should be affirmed on this question.

APPENDIX

COUNT II.

10.
The allegations of paragraph 10 are denied, but Defendant would show that in *730 June, 1973 at a time when Plaintiff was in default on an earlier indebtedness, at the request of Plaintiff, in order to have time to get the money to pay her debts, Defendant agreed to incorporate all of the debts of Mr. and Mrs. Mann to a single indebtedness. Defendant denies that Plaintiff was forced or required to assume any indebtedness of Billy Mann, but to the contrary, would show that Plaintiff voluntarily undertook the obligation as an inducement to this Defendant reworking the overall indebtedness of Mr. and Mrs. Mann.