569 So.2d 1209 (1990)
AUSTIN DEVELOPMENT COMPANY, INC., a Mississippi Corporation, Austin D. Check, Individually, Ronald L. Evans, Individually,
v.
BANK OF MERIDIAN (BRANCH OF GREAT SOUTHERN NATIONAL BANK).
No. 07-CA-59109.
Supreme Court of Mississippi.
October 24, 1990.
Lawrence Primeaux, Goldman Dreyfus & Primeaux, Meridian, for appellant.
E. Gregory Snowden, Bourdeaux & Snowden, Meridian, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and BLASS, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Austin D. Check (Check) and Austin Development Company, Inc. (Company) appeal from an order of the Lauderdale County Circuit Court, which granted summary *1210 judgment in favor of the Bank of Meridian (Bank). Check and Company were held liable, jointly and severally, for the principal sum of a promissory note sued upon in the amount of $110,000.00, along with interest, attorney fees and court costs. The appellants present three issues for decision by this Court.

FACTS
In the spring of 1985, Check was indebted to the Bank for approximately $400,000.00. All of his loans were cross-collateralized. In April of 1985, Check had a business arrangement with Ronald Evans in which Check was to develop some real estate while Evans provided the financial backing. He requested a $50,000.00 loan from the Bank to finance the venture.
Jim Mitchell, the Chief Financial Officer, informed Check that the Bank could not grant the loan without more collateral. Check obtained a Letter of Credit from Evans in the amount of $50,000.00 drawn on First City Bank, Valley View, Dallas, Texas (Valley View Bank).
Check was required to assign all of his interest in the Letter of Credit to the Bank along with a customer's draft so that the Bank could call upon the Letter of Credit for payment at any time without further notice to him. He also surrendered the Letter of Credit to the Bank for which he received a collateral receipt. The Letter of Credit was irrevocable prior to its expiration date, and the Bank could call upon the Letter of Credit for payment at any time that the loan was in default.
Check executed a note for $50,000.00 using the Letter of Credit as collateral. The note provided that the loan was cross-collateralized with the collateral used to secure all of his other debts to the Bank. Later, Check needed to increase the loan by $60,000.00. He obtained an increase in the Letter of Credit to $110,000.00, and the principal amount of the loan was increased to $110,000.00.
The note matured on September 3, 1985, and it was not paid. The expiration date of the Letter of Credit was September 9, 1985. The Bank, however, failed to send a collection letter to the Valley View Bank until September 9, 1985. Valley View Bank received the collection letter on September 12, 1985. Valley View Bank refused to pay the $110,000.00 because the Bank had failed to make a timely demand for payment. According to Leslie Usher, Senior Vice President of the Bank, and Luther Holcomb, a Bank employee, the Bank's failure to call upon the Letter of Credit was a "slip-up".
When Check was informed that the Bank had failed to call upon the Letter of Credit before the expiration date, Check met with Jim Mitchell to discuss his options. Check was upset because the Bank's failure to act had cost him $110,000.00. According to Check, he could not afford to pay it himself, and if the Bank called in his other loans, it would cause him financial disaster. Possible litigation was also discussed.
The Bank made it clear that, if Check refused to pay the note, it would pursue prompt collection from him and the Company. As a result, Check executed a renewal note in the principal amount of $110,000.00. Check was not required to put up any new collateral to secure this note. The Bank, however, obtained a personal guarantee from Evans after the Letter of Credit was not extended.
The history of the subsequent payments and renewals by Check and Company is as follows:
1. On October 7, 1985, Check and Company paid then-current interest of $1,265.75 due on the indebtedness, and executed a renewal note dated September 23, 1985.
2. On January 6, 1986, Check and Company paid then-due interest of $3,428.08, and executed a renewal promissory note dated December 23, 1985.
3. On February 24, 1986, Check and Company paid then-due interest of $2,169.86, and executed a renewal note dated February 21, 1986.
4. On May 27, 1986, Check and Company paid then-due interest of *1211 $2,079.46, and executed a renewal note dated April 22, 1986.
5. On August 11, 1986, Check and Company paid then-due interest in the sum of $2,066.85, and executed a renewal note dated June 23, 1986. The renewal note matured on October 21, 1986, and has been in default since that date.
The Bank brought suit against Check, Company and Evans for payment of the note. Evans, however, failed to answer. As a result, a default judgment was entered against Evans in the amount of $122,619.97 plus interest, attorney's fees of $25,000.00, and all costs.[1]
The Bank continued to pursue collection from Check and Company. Check and Company filed a counterclaim alleging that the Bank was negligent in failing to call upon the Letter of Credit before its expiration date.
On September 9, 1987, the Bank filed a motion for summary judgment and an affidavit supporting the motion. Check filed an affidavit opposing the motion for summary judgment along with several exhibits. The lower court took the motion under advisement and extended the time for discovery.
Check and Company filed a motion requesting leave to amend their counterclaim in order to seek punitive damages. The Bank renewed its motion for summary judgment on December 17, 1987. On February 1, 1988, Check and Company filed several affidavits, excerpts from two depositions, and several exhibits in opposition to the motion for summary judgment.
The lower court granted the motion for summary judgment on February 9, 1988. Check and Company filed a motion for rehearing, but it was denied on February 24, 1988. Check and Company appealed the lower court's decision to this Court with supersedeas.
LAW
I. DID THE LOWER COURT ERR IN GRANTING THE MOTION FOR SUMMARY JUDGMENT?
II. DID THE LOWER COURT ERR IN RULING THAT CHECK AND COMPANY HAD WAIVED ALL POSSIBLE CAUSES OF ACTION BY EXECUTION OF RENEWAL NOTES AND PAYMENT OF INTEREST THEREON?
III. DID THE LOWER COURT ERR IN NOT ALLOWING THE ISSUE OF BANK'S NEGLIGENCE TO GO TO THE JURY?
Issue one is comprised of issues two and three and they will be discussed as one. The simple question here is whether or not Check and Company waived all claims they may have had against the Bank by their actions, regardless of the Bank's negligence and liability.
The lower court found that Check and Company had executed and delivered five renewal promissory notes and paid the accrued interest on five separate occasions. Those transactions occurred over the course of a period of some eleven months after the date upon which the defendants/appellants possessed full knowledge of all of the facts and circumstances constituting a possible defense to the payment of their indebtedness. The lower court held:
[T]his Court as a matter of law finds and determines that the said defendants legally waived any defense to the notes and any possible causes of action otherwise available to the defendants against plaintiff arising from the facts and circumstances known to defendants at the times the renewal notes were executed and the interest was paid, and that there therefore exists no genuine issue of material fact with respect to the claims for relief asserted by the parties in their respective pleadings, and the plaintiff is entitled to summary final judgment as a matter of law pursuant to Miss.R.Civ.P. 56(a) and 56(b).
*1212 Check filed a motion for rehearing in which he claimed that the lower court erred in not allowing him to proceed against the Bank for damages based on its negligence. The lower court overruled the motion and stated the following:
On hearing, the Court considered argument of counsel for both parties and considered Defendants' claim that the Court erred when it held in the Summary Final Judgment that Defendants not only legally waived any defense to the notes upon which the suit in this civil action was based, but also all possible causes of action otherwise available to the Defendants against the Plaintiff arising from the facts and circumstances known to Defendants at the time ... the renewal notes were executed and the interest was paid.

The Court finds that, under the decision of Citizens National Bank v. Waltman, 344 So.2d 725 (Miss. 1977), Brickell v. First National Bank, 373 So.2d 1013 (Miss. 1979), and Turner v. Wakefield, 481 So.2d 846 (Miss. 1985), the Court is legally bound to preclude Defendants' claims against Bank of Meridian, including the claim that Bank of Meridian negligently impaired and caused the loss of $110,000 in collateral entrusted to it by the Defendants.
Appellants claim that the lower court's application of the Waltman rule was too "rigid". They distinguish the present case on the premise that they, unlike Mrs. Waltman, did not voluntarily renew the note; that they were faced with financial ruin, if they did not renew the note. They maintain that they were coerced into renewing the note due to the unequal bargaining position existing between them and the Bank. However, we are of the opinion that this is a stronger case for applying the waiver rule than Waltman and we distinguish this case from the facts of Waltman.[2]
In Gay v. First Nat'l Bank, 172 Miss. 681, 160 So. 904 (1935), the Court concisely and emphatically stated the rule of law which governs this case:
Where a party has full knowledge of all defenses to a note and executes a new note payable at a future date, he then waives all his defenses and becomes obligated to pay the new note. Tallahatchie Home Bank v. Aldridge, 169 Miss. 597, 604, 153 So. 818. And where the facts and circumstances are such that a reasonably prudent person, judged by normal standards, would or should have made inquiry, which inquiry, if reasonably pursued and with ordinary diligence, would have led to full knowledge of his defenses, then it becomes the duty of the party or parties to make such inquiry or investigation before executing the renewal note, and if he fail to do so he is as much bound as if he had actual knowledge of all the facts.

Id. 172 Miss. at 686, 160 So. at 905 (emphasis added); See also Turner v. Wakefield, 481 So.2d 846 (Miss. 1985); Brickell v. First Nat'l Bank, 373 So.2d 1013 (Miss. 1979); and Citizens Nat'l Bank v. Waltman, 344 So.2d 725 (Miss. 1977).
In Waltman, supra, the majority of the Court stated:
We need not decide whether the jury was properly instructed, nor whether it could properly accept the version of the facts offered by Mrs. Waltman. Nor need we decide whether, accepting Mrs. Waltman's version of the facts as true, the Bank committed any actionable wrong, either fraudulently or negligently. We have reached the inescapable conclusion that by executing the last renewal note on August 8, 1973, with full knowledge of the surrounding circumstances, Mrs. Waltman waived any cause of action she might have had against the Bank based on the earlier notes. Therefore, the defendant's peremptory instructions should have been granted.
Id. at 727 (emphasis added).
As set forth hereinabove, the appellants were well aware of the circumstances surrounding *1213 the Bank's failure to call upon the letter of credit before they executed the renewal note on September 23, 1985. Subsequently, Check executed four more notes and made five interest payments. As a result, he waived any defense or cause of action that he had against the bank. Therefore, the judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.
ANDERSON, J., not participating.
NOTES
[1] Evans is a resident of Texas. According to the Bank, its Texas counsel has been able to reduce the principal indebtedness by $25,000.00 by enforcing the judgment.
[2] The author of this opinion dissented in Waltman, supra. The record revealed that Waltman was an unsophisticated woman who had been defrauded by her husband, and she signed a promissory note initially upon a representation of the Bank, which turned out to be false.