¶ 1. Lucille Owens appeals the circuit court's grant of Dr. Keith R. Thomae's cross-motion for summary judgment. We find no error and affirm.
 FACTS ¶ 2. On November 30, 1995, Lucille Owens was admitted to the University of Mississippi Medical Center ("UMMC") for a serious stab wound to her groin area. Owens was taken to the emergency room where Dr. Keith R. Thomae, the on-call surgeon, along with resident doctors Amos, Dixon, and Killough, performed surgery. Owens remained hospitalized at UMMC through December 13, 1995. During the hospitalization, Owens underwent three additional operations, and her right leg was amputated. Throughout all of Owens' operations, Dr. Thomae was assisted by at least one resident physician. *Page 208 
 ¶ 3. At the time of Owens' injury, Dr. Thomae was employed by the Board of Trustees of State Institutions of Higher Learning of the State of Mississippi as an assistant professor of surgery at UMMC. His duties included instructing medical students and residents and treating patients at UMMC and its affiliated sites. Additionally, Dr. Thomae was employed as a surgeon by University Surgical Associates ("USA"). USA is one of many departmental practice plans at UMMC, wherein UMMC faculty-physicians, who engage in clinical practice, are allowed to earn additional income over their contractual salary pursuant to a formula devised by UMMC.
 ¶ 4. UMMC physicians are contractually required to be part of their department's plan as approved by the Board of Trustees. As a surgeon, Dr. Thomae was in the Department of Surgery and was under the provisions of the UMMC Department of Surgery Practice Plan. The Department of Surgery Practice Plan applicable to Dr. Thomae as a surgeon was USA. The agreement for USA specifically stated that members of USA must hold faculty positions at UMMC in the Department of Surgery and also states that when a member ceases to hold a faculty position at UMMC he or she is no longer eligible to be a member of USA.
 ¶ 5. On July 7, 1997, Owens filed a medical malpractice suit against Dr. Thomae and two resident physicians. The defendants moved for summary judgment on the basis that they were employees of UMMC and that Owens failed to comply with the notice and statute of limitations provisions of the Mississippi Tort Claims Act ("MTCA"), as required by Mississippi Code Annotated Section11-46-7(2) (Rev. 2002). The Circuit Court of Hinds County granted summary judgment to all defendants. Owens appealed, and the Mississippi Supreme Court affirmed the grant of summary judgment in favor of the resident physicians but remanded the claim against Dr. Thomae for the limited purpose of further discovery on the issue of Dr. Thomae's employment status. Owens v.Thomae, 759 So.2d 1117 (Miss. 1999).
 ¶ 6. On remand, the Circuit Court of Hinds County again granted summary judgment in favor of Dr. Thomae. The court found that Dr. Thomae was an employee of UMMC and was, therefore, protected from personal liability under the MTCA. Owens now appeals to this Court. She argues that Dr. Thomae was acting as an independent contractor and not as an employee of UMMC.
 STANDARD OF REVIEW ¶ 7. This Court employs a de novo standard of review of a trial court's grant of summary judgment. Mozingo v. Scharf,828 So.2d 1246, 1249 (¶ 5) (Miss. 2002). When there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law, summary judgment is proper. Id. The burden of demonstrating that there is no genuine issue of material fact falls on the party requesting summary judgment. Id. If any genuine issues of fact exist, the trial court's grant of summary judgment will be reversed; otherwise, the decision will be affirmed. Id.
 ANALYSIS ¶ 8. Owens contends that Dr. Thomae was not an employee of UMMC at the time he treated her and is not immune under the MTCA. InMiller v. Meeks, 762 So.2d 302, 310 (¶ 20) (Miss. 2000), the supreme court listed five factors to determine whether a faculty-physician was acting as an employee at the time of the alleged negligence and is entitled to immunity under the MTCA. The five factors are: *Page 209 
(1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; (4) whether the act complained of involved the use of judgment and discretion; and (5) whether the physician received compensation, either directly or indirectly, from the patient for professional services rendered. Id. We will analyze each factor below.
1. The nature of the function performed by the employee
 ¶ 9. During each of Owens' four surgeries, Dr. Thomae was assisted by at least one resident physician. Dr. Thomae's function was that of a surgeon and an instructor. An integral part of Dr. Thomae's employment with UMMC is that Dr. Thomae must provide teaching services to UMMC medical students and resident physicians in a clinical surgical setting. Dr. Wallace Connerly, Vice-Chancellor for Health Affairs and Dean of the School of Medicine at UMMC, described the teaching function of UMMC professors of surgery, such as Dr. Thomae, as follows:
 When you talk about any of the surgical specialties, whether it is general surgery, trauma or what have you, do understand that teaching in that environment is primarily at the bedside or at the operating table. You are not talking about lectures. You are not talking about testing. You are not talking about grading tests. You are talking about somebody teaching somebody how to do it at the operating table and, then, how to care for them post-operatively in their rooms.
Dr. Connerly testified that in the setting of an academic health center it is expected that every case be used as a teaching case irregardless of whether the patient is a private pay, Medicare/Medicaid or non-paying patient.
 ¶ 10. Owens argues that because Dr. Thomae operated on her more than once and provided post-operative follow-up care, the nature of his role was changed to that of a physician in private practice. However, it was Dr. Thomae's duty to provide follow-up care to any patient he treated. All of Dr. Thomae's treatment of Owens arose from and out of his initial treatment of her in the UMMC emergency room, where he was required by his contractual obligation with the State of Mississippi to provide medical attention to patients. Furthermore, the four surgical operations performed by Dr. Thomae and the resident physicians occurred while Owens was still a patient at UMMC.
 ¶ 11. Owens also contends that because she was not a Medicaid/Medicare or an indigent patient, the governmental function of caring for the less fortunate was not present, and thus, Dr. Thomae is not protected under the MTCA. However, Owens' position that UMMC faculty-physicians are entitled to the protection of the MTCA only when they treat Medicaid/Medicare or indigent patients is without merit. UMMC medical practice plans, such as USA, provide services to both insured and uninsured patients. See Mozingo v. Scharf, 828 So.2d 1246 (Miss. 2002);Watts v. Tsang, 828 So.2d 785 (Miss. 2002). "Medical Practice Plans are organized groups of physicians with medical school faculty appointments who, in addition to research and medical education responsibilities, provide patient care services to both insured and uninsured patients." Mozingo, 828 So.2d at 1254 (¶ 23). In both Mozingo and Watts, the court held that the UMMC departmental practice plan, which serves the exact same function as the departmental plan in the case sub judice, was a governmental entity for purposes *Page 210 
of the MTCA, and the doctor defendants were held to be state employees. Mozingo, 828 So.2d at 1254-55 (¶¶ 24-25); Watts,828 So.2d at 792-93 (¶¶ 20, 23, 26-27).
 ¶ 12. Upon review, we find that Dr. Thomae was employed as an on-call surgeon pursuant to his contract with UMMC and the State of Mississippi. Thus, this factor weighs in favor of Dr. Thomae's status as an employee.
 2. The extent of the State's interest and involvement in the function
 ¶ 13. UMMC was established as a teaching hospital. Miss. Code Ann. § 37-115-25 (Rev. 2001). Pursuant to his contract with the State of Mississippi, Dr. Thomae was at all times engaged in the training of residents while he was providing surgical treatment to Owens. When a faculty-physician at UMMC performs a surgical procedure in his capacity as teacher and professor, he is fulfilling the state's interest in participating in the educational process of student physicians. Indeed, Mississippi has a keen interest in providing medical education to young students, interns, and residents in the practice of medicine. The court in Sullivan v. Washington, 768 So.2d 881, 885 (¶ 19) (Miss. 2000) stated:
 It is very important that faculty physicians supervise the progress of interns and residents. This provides the training necessary to insure that Mississippi has a ready pool of competent physicians. Likewise, the resident must be able to practice medicine under the guidance of a learned physician in order to master his/her profession. The State has a strong interest in maintaining such a practical and educational environment, meeting the needs of both the physicians and the patients.
 ¶ 14. In Mozingo, the court held that a UMMC faculty-physician who provided anesthesia services to a patient through the Department of Anesthesia Practice Plan, UAS, was a state employee and shielded from personal liability by the MTCA.Mozingo, 828 So.2d at 1254 (¶ 24). The court held:
 Dr. Scharf was engaged in training a resident while he was providing anesthesia services to Mozingo. It would be impossible to fully equip a new doctor with the tools he or she needs to practice medicine without actually engaging in the hands-on practice of providing care to patients. That is indeed what Dr. Scharf was doing on March 27, 1997, when he was showing Dr. Alexander how to administer anesthesia to Mozingo.
Id. at 1252 (¶ 16).
 ¶ 15. During the surgical procedures he performed on Owens, Dr. Thomae was acting as a teacher to no less than three residents and an unidentified number of medical students. Dr. Thomae's role as a treating physician and instructor are mandated by his employment with UMMC. As previously stated, the State of Mississippi has an interest in insuring competent, well-educated physicians. Therefore, we find this factor favors Dr. Thomae.
 3. The degree of control and direction exercised by the state over the employee
 ¶ 16. At the time Owens was admitted to UMMC, Dr. Thomae was the on-call surgeon and was required by his contract with the State of Mississippi to be on call at that particular time and to take care of all patients needing surgical care. Dr. Connerly testified that a surgeon on call has no choice under his employment contract to refuse to treat a patient. Thus, Owens was treated by Dr. Thomae simply because she arrived at UMMC's emergency room the night that Dr. Thomae was *Page 211 
the on-call surgeon. Prior to November 30, 1995, Dr. Thomae had no physician-patient relationship with Owens.
 ¶ 17. Beginning on November 30, 1995, Dr. Thomae rendered treatment to Owens because he was scheduled to do so by a UMMC departmental practice plan. Dr. Thomae was not allowed to refuse this assignment. He was specifically required to treat her through his employment contract with UMMC. Because participation in their respective practice groups does not change their status as UMMC employees, physicians such as Dr. Thomae remain subject to all UMMC policies and procedures. USA, like other departmental practice plans, is under the management and control of the departmental chairman. The departmental chairman provides day-to-day oversight of the practice group, and USA is subject to limited oversight by UMMC's Vice Chancellor for Health Affairs and UMMC's Associate Vice Chancellor for Administrative Affairs. Thus, the degree of control and discretion factor weighs in favor on Dr. Thomae's status as an employee of the State of Mississippi.
 4. Whether the act complained of involved the use of judgment and discretion
 ¶ 18. Physicians exercise a significant amount of judgment and discretion in treating, diagnosing, and observing their patients.Sullivan, 768 So.2d at 885 (¶ 22). Therefore, it cannot be doubted that Dr. Thomae used some discretion in treating Owens. However, these acts of discretion are considerations, but are not determinative acts. Id."Virtually every act performed by an individual involves the exercise of some discretion. Obviously, a professional retains a significant amount of discretion in the operation of his profession." Id. Indeed, the "Hippocratic Oath requires that the physician use [his] power to help the sick to the best of [his] ability and judgment." Id. Therefore, "[w]ithout question, the fourth Miller factor . . . is met in cases such as this." Mozingo, 828 So.2d at 1253 (¶ 18).
 5. Whether the physician received compensation, either directly or indirectly, from the patient for professional services rendered
 ¶ 19. Owens contends that Dr. Thomae billed and collected payment for his treatment of Owens in his individual capacity rather than through USA. The record shows that bills for Dr. Thomae's surgical services were submitted to Owens' employer and/or workers' compensation carrier by USA in the name of Keith R. Thomae, M.D., University Surgical Associates.
 ¶ 20. Dr. Connerly testified that professional bills are submitted in the name of the individual medical provider, not the medical group, to conform with reimbursement legal guidelines. Under the Department of Surgery Practice Plan, and the USA Agreement, Dr. Thomae could not and did not receive any compensation from Owens or her insurer directly. All billings sent and payments received were through the UMMC plan, USA, who had authority to endorse Dr. Thomae's name on any checks received for patient care under the USA Agreement. Dr. Thomae had no right to direct payments made by Owens' insurer as stated in the USA Agreement: "Each Member agrees to waive any and all right to direct compensation from any patient for health care services rendered during the period of this Agreement regardless of the nature of that service, and assigns all such compensation and rights to compensation to the Group." Thus, USA handles the billing and collection for Dr. Thomae's services, and Dr. Thomae does not collect directly from his patients. Any remuneration to Dr. Thomae by way of his group's collection was, at most, indirect. Therefore, this factor weighs in favor of Dr. Thomae. *Page 212 
 ¶ 21. Considering all five Miller factors and applying them to the case at bar, it is clear that they weigh strongly in favor of Dr. Thomae's status as an employee. Dr. Thomae was employed by UMMC and was required to participate in his department's practice plan, USA. In his capacity as a surgeon and an employee of UMMC, Dr. Thomae was required to administer treatment to Owens. He performed a dual role by providing medical services to Owens and by providing instruction to medical residents who were present for the surgery. The State of Mississippi has a keen interest in both roles performed by Dr. Thomae. Certainly, Dr. Thomae's actions involved discretion and judgment, but this factor is not solely determinative of Dr. Thomae's employment status. Finally, Owens did not pay Dr. Thomae directly for services rendered. Dr. Thomae was permitted to earn income through USA in addition to his base salary paid by UMMC. However, this income through USA was limited by his contract with UMMC, and he was required to return to UMMC a portion of that income.
 ¶ 22. Therefore, we find that Dr. Thomae was an employee of UMMC and therefore an employee of the State of Mississippi. Thus, Dr. Thomae is immune from liability under the MTCA. We affirm the decision of the circuit court.
 ¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY ISAFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THEAPPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, AND ISHEE, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.