KING, C.J.,
 

 for the Court:
 

 ¶ 1. William P. Knox, acting in his individual capacity and as the trustee of the William P. Knox revocable living trust, appeals a judgment of the DeSoto County Circuit Court, which granted summary judgment in favor of BancorpSouth Bank, Inc. On appeal, Knox argues the following issues which are stated verbatim: (1) whether BancorpSouth waived its affirmative defenses by failing to timely pursue the defenses; (2) whether the trial court erred in finding that Knox’s claims are barred by the doctrine of merger; and (3) whether the trial court erred in granting summary judgment when the evidence demonstrated genuine issues of material fact. Finding no error, we affirm the judgment of the trial court.
 

 FACTS
 

 ¶ 2. Knox, who controls and operates a variety of business enterprises, including Security Builder, Inc., met with Barry Hunt, a mortgage broker for United Mortgage DeSoto, in late 2004 to obtain a loan. The loan was to be for 80% of the appraised value of the collateral, the Continental Foundry Building. Knox believed that the Foundry Building would appraise for $3,200,000 and would allow a loan of approximately $2,560,000. Knox desired a fixed-interest-rate loan repayable over a term of twenty years.
 

 ¶ 3. Hunt informed Knox that it would take approximately thirty to sixty days to process and disburse the loan. However, because Knox had agreed to purchase some real estate, he needed approximately $400,000 immediately. Understanding the urgency of Knox’s need, Hunt, who had in the past obtained real-estate loans from BancorpSouth for his customers, encouraged Knox to meet with BancorpSouth representatives about obtaining a loan. In January 2005, Knox met with representatives of BancorpSouth. Hunt and Jane Brown, vice president of Security Builder’s and Knox’s assistant, accompanied Knox to the meeting. Knox had enjoyed a ten-year
 
 *1259
 
 banking relationship with BancorpSouth during which time he had obtained more than 200 loans from BancorpSouth. Most of those were construction loans.
 

 ¶ 4. Representing BancorpSouth at this meeting were Michael Anderson, Anthony Vanderford, and Brian Walhood. According to Anderson, Knox requested a $2,000,000 replenishing line of credit to purchase some real estate. Anderson testified during his deposition that at the end of one. year, the outstanding balance drawn against that line of credit would then be converted to a permanent loan. Anderson stated that during the meeting in January 2005, Knox requested that the permanent loan have an amortization period anywhere from ten to fifteen years with a three- to five-year balloon payment. Anderson informed Knox that the request for the permanent loan would require approval by BancorpSouth loan administration. According to Knox, he and BancorpSouth entered into two oral agreements during the meeting. The first agreement was to grant Knox an equity loan of 80% of the appraised value of the Foundry Building, payable over fifteen years at a fixed interest rate, which was similar to the loan Knox sought from Hunt. Knox stated that like Hunt, BancorpSouth could not process and disburse the equity loan as quickly as he needed the funds without approval from loan administration. As a result, Bancorp-South entered into a second oral agreement with him. In the second oral agreement BancorpSouth would provide Knox a temporary line of credit of $2,000,000, which would be available immediately and would bridge the gap until the appraisal for the Foundry Building was completed and the equity loan could be disbursed. Knox stated that the line of credit was not renewable and was solely for use until the equity loan was approved. Knox testified that the first disbursement from the line of credit in the amount of $388,000 was made on February 2, 2005.
 

 ¶ 5. A letter dated February 4, 2005, from Rip Walker and Jeff Norwood to Vanderford at BancorpSouth indicated that an inspection of the Foundry Building to estimate the market value of the property was conducted on July 14, 2004, and January 31, 2005. The letter indicated that the property appraised at $2,500,000, contingent upon the completion of construction of Building IB of the Foundry Building, which was projected to be completed on April 1, 2005. On February 14, 2005, Knox, as the trustee of the William P. Knox revocable living trust, executed a short-term loan with BancorpSouth. The short-term loan in the amount of $2,000,000 had an interest rate of 5.5% per annum, and it matured on February 14, 2006.
 

 ¶ 6. On June 18, 2006, BancorpSouth representatives requested a meeting with Knox to discuss his line of credit with BancorpSouth. The meeting was held on June 19, 2006. The parties memorialized the substance of the meeting in separate memorandums. BancorpSouth stated that after reviewing the builder-guidance line-of-eredit relationship and other factors, it was concerned about Knox’s creditworthiness. As a result of BancorpSouth’s concerns, it offered Knox the option of renewing the existing balance on the short-term loan instead of calling the existing short-term loan as due and payable. The renewed note would be payable in three years with an interest rate of 8.5% per annum and a balloon payment to be made at the end of the three years. Knox signed the renewal document on June 19, 2006.
 

 ¶ 7. On December 8, 2006, Knox filed a complaint against BancorpSouth for breach of contract, tortious breach of contract, promissory estoppel, equitable estop-
 
 *1260
 
 pel, and infliction of mental anguish. On March 14, 2008, BancorpSouth filed a motion for summary judgment or, in the alternative, for partial summary judgment and a motion to enforce the waiver of a jury trial. The motion for summary judgment was requested on the following grounds: (1) there was no genuine issue of material fact; (2) there was no enforceable contract; (3) Knox’s claims were barred by the statute of frauds pursuant to Mississippi Code Annotated section 15 — 3—1 (c) — (d) (Rev.2003); (4) the contract lacked mutual assent, (5) the essential element of a valid contract — two or more contracting parties — was not sufficiently definite per the alleged oral contract; (6) the unambiguous renewal note of June 19, 2006, merged into all prior or contemporaneous oral communications and negotiations; (7) the execution of the renewal note waived all claims and defenses; (8) Knox’s claims were barred by the parol evidence rule and the economic-loss doctrine; (9) there is no evidence of compensable damages; and (10) there was no viable claim for punitive damages. On June 12, 2008, the trial judge conducted a hearing on the motion for summary judgment. Summary judgment was granted in favor of BancorpSouth on June 26, 2008. On July 3, 2008, Knox filed a motion to amend judgment, arguing that the trial court erred in its application of the doctrine of merger to the facts of this case. On August 4, 2008, the trial court conducted a hearing on Knox’s motion to amend the judgment. On August 8, 2008, an order was filed denying Knox’s motion to amend the judgment and affirming the order granting summary judgment.
 

 DISCUSSION
 

 ¶ 8. “This Court employs a de novo standard of review of a trial court’s grant of summary judgment.”
 
 Owens v. Thomae,
 
 904 So.2d 207, 208 (¶ 7) (Miss.Ct.App.2005). Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). “The burden of demonstrating that there is no genuine issue of material fact falls on the party requesting the summary judgment.”
 
 Mozingo v. Scharf,
 
 828 So.2d 1246, 1249 (¶ 5) (Miss.2002). “If any genuine triable issues of fact exist, the trial court’s grant of summary judgment will be reversed; otherwise, the decision will be affirmed.”
 
 Id.
 
 at 1249-50 (¶ 5).
 

 ¶ 9. Although Knox argues three issues in his brief, the principal issue before this Court is whether the trial court erred in granting summary judgment. The trial court granted summary judgment on the grounds that the alleged oral agreement claimed by Knox merged into the written contracts of February 14, 2005, and June 19, 2006, and Knox neither alleged nor presented any proof that BancorpSouth had breached the "written contracts.
 

 I. Waiver of Affirmative Defenses
 

 ¶ 10. Knox argues that because Ban-corpSouth did not plead the affirmative defenses of merger and waiver until more than a year after filing its response, it waived its opportunity to raise these defenses in its motion for summary judgment. Knox contends that merger is a factual question of intention that must be decided by the trier of fact. Bancorp-South contends that it timely asserted its affirmative defenses after securing the necessary discovery to understand the claimed terms and substance of the alleged oral contracts.
 

 ¶ 11. According to Mississippi Rule of Civil Procedure 8(c):
 

 In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and
 
 *1261
 
 award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counter-claim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been proper designation.
 

 In
 
 Daughtrey v. Allred,
 
 22 So.3d 1253, 1264 (¶ 26) (Miss.Ct.App.2009), this Court held that “[a] defendant’s failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver.”
 

 ¶ 12. According to Mississippi Rule of Civil Procedure 8(c), waiver is an affirmative defense that should have been set forth in BancorpSouth’s responsive pleading. The record indicates that Bancorp-South invoked the defense of waiver as its first defense in its responsive pleading. However, the doctrine of merger is not an affirmative matter, which would terminate or stay litigation, that must be pled pursuant to Rule (8)(c). The initial scheduling order, which required all discovery be completed on or before January 1, 2008, and that all motions, other than motions in limine or for equitable relief be filed by February 1, 2008, was amended on October 23, 2007. The amended scheduling order required that discovery be completed by February 15, 2008, and it directed the parties to attempt in good faith to mediate this matter on or before June 1, 2008. The record indicates that Knox was deposed on April 26, 2007, but Hunt and Brown were not deposed until December 19, 2007. BancorpSouth did not file its motion for summary judgment until March 14, 2008.
 

 ¶ 13. After a hearing on Knox’s motion for summary judgment, the trial court concluded in a written opinion that any prior oral negotiations or arguments had merged into and were replaced by the written contracts. The trial judge granted summary judgment in favor of Bancorp-South. Subsequently, Knox filed a motion to amend the judgment arguing that the court erred in granting summary judgment on the ground of merger, and that the doctrine of merger was an affirmative defense that should have been raised in BancorpSouth’s answer, but it was not. After conducting a hearing on Knox’s motion to amend the judgment, the trial court considered the arguments of counsel for both parties, but the court held that Ban-corpSouth clearly pled the affirmative defense of waiver. The trial court opined that the doctrine of merger was analogous of the parol-evidence rule, and the record indicated that BancorpSouth had pled the parol-evidence rule in its responsive pleading.
 

 ¶ 14. In reviewing the trial court’s determination of whether Bancorp-South waived its affirmative defenses of waiver and merger, we consider the supreme court’s decision in
 
 Austin Development Co. v. Bank of Meridian,
 
 569 So.2d 1209 (Miss.1990). Just as in
 
 Austin Development,
 
 Knox argues that he did not voluntarily renew the note, but he was coerced into renewing the note due to an unequal bargaining position and that had he not executed the renewal note he would have faced financial disaster.
 
 See id.
 
 at 1212. As the supreme court held in
 
 Austin Development,
 
 a party who has full knowledge of all defenses to a note and
 
 *1262
 
 executes a new note payable at a future date waives all defenses and becomes obligated to pay the new note.
 
 Id. In
 
 addition to having a ten-year business relationship with BancorpSouth, Knox was an experienced businessman. Not only was Knox aware of the consequences surrounding his execution of the renewal note, but he made a sound business decision to execute the written contracts. As a result, Knox waived his claim to any cause of action that he had against BancorpSouth.
 

 II. Doctrine of Merger
 

 ¶ 15. Knox contends that the trial court erred for several reasons in granting summary judgment in favor of Bancorp-South on the basis of merger. First, Knox argues that BancorpSouth did not meet its burden of proof at the summary-judgment stage to prove that the parties intended the renewal note to be a renewal of the line of credit and for the equity-loan agreement to merge into the renewal. Second, Knox asserts that looking at the four corners of the contract, the contract is not a renewal of any other loan. Third, Knox argues that because the renewal note does not contain an integration clause, the court cannot imply that the parties intended to include an integration clause; therefore, without an integration clause, the doctrine of merger does not apply. Last, Knox asserts that the doctrine of merger only applies to prior agreements that involve the same parties, same subject matter, and transaction; therefore, because the equity loan, line of credit (i.e. short-term loan), and renewal note (i.e. long-term loan) are three distinct agreements, which involve three distinct amounts of money to be loaned, three distinct terms for repayment, and the terms of neither agreement conflicts, the doctrine of merger does not apply in the case.
 

 ¶ 16. The trial court opined that the prior oral negotiations and agreements merged and were replaced by the written contracts between Knox and BancorpSouth dated February 14, 2005, the short-term loan, and the June 19, 2006, renewal note or long-term loan. The trial judge found that Knox did not provide any evidence that he was forced to execute the notes under duress. In addition, the trial court opined that Knox was an experienced businessman who made a strategic economic decision to enter into an agreement with BancorpSouth and accept the terms of those contracts.
 

 ¶ 17. “In a contract which purports to be complete, prior or contemporaneous negotiations are merged into the completed contract.”
 
 Singing River Mall Co. v. Fields, Inc., 599
 
 So.2d 938, 946 (Miss.1992). “In reviewing negotiations culminating in a contract[,] it is assumed that previous negotiations are merged in the final document and that it expresses the intention of the parties.”
 
 Hoerner v. First Nat’l Bank of Jackson,
 
 254 So.2d 754, 759 (Miss.1972). Under the doctrine of merger, acceptance of the terms of the written contracts constitutes acceptance of any prior oral discussions, negotiations, or agreements. “[A] written contract cannot be varied by prior oral agreements.”
 
 Godfrey, Bassett & Kuykendall, Ltd. v. Huntington Lumber & Supply Co.,
 
 584 So.2d 1254, 1257 (Miss.1991). Knox freely agreed to sign both written contracts.
 

 ¶ 18. The record does not indicate that Knox alleged or presented any evidence that BancorpSouth violated or breached the written agreements in any way. Moreover, Knox neither provided any evidence of any oral agreements between the parties nor any evidence of the intentions of both parties besides what was found in the written agreements. A general rule of contracts “is that in the ab
 
 *1263
 
 sence of anything to indicate a contrary intention, instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together, since they are, in the eyes of the law, one contract or instrument.”
 
 Gilchrist Tractor Co. v.
 
 Strib
 
 ling,
 
 192 So.2d 409, 417 (Miss.1966). Therefore, we find that summary judgment in this case was proper.
 

 ¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.