CARLTON, J.,
dissenting:
¶ 17. I respectfully dissent from the majority’s opinion. The majority finds that Kelsey and Yumeka Rushing waived any claims they possessed against Trust-mark National Bank when they renewed their existing, or original, construction loan with Trustmark while aware of potential causes of action they intended to pursue against the bank. The majority bases this finding on the waiver doctrine as set forth in Citizens National Bank v. Wattman, 344 So.2d 725 (Miss.1977).[3] A review of Wattman reveals that Wattman held that the execution of a renewal note with knowledge of the facts constituting a defense to the “original” note waived any defenses to the renewal. Id. at 728. However, no default exists in today’s case as to the debt incurred by either the renewal or the original note. In fact, a review of the record shows that the Rush-ings satisfied their debt owed to Trust-mark in full in May 2006 after obtaining long-term financing from another financial institution. Further, the record shows that nothing in the Rushings’ loan agreement with Trustmark, or in the renewal of that agreement, waived Trustmark’s obligation to perform in good faith.[4] Accordingly, I find that the Rushings presented questions of material fact as to whether Trustmark breached its duty of good faith by negligently .managing the Rushings’ construction loan.
¶ 18. I submit that the renewal of a loan has the effect of a new promise to pay the original debt with new statute of limitations and new duties until expiration of the time applicable to the new promise to pay. Further, “[t]he law of Mississippi imposes an obligation of good faith and fundamental fairness in the performance of every contract[.] [Tjhis requirement is so pronounced that courts have the power to refuse to enforce any contract in order to avoid an unconscionable result.” Sawyers v. Herrin-Gear Chevrolet Co., 26 So.3d 1026, 1034-35 (1121) (Miss.2010). See Miss.Code Ann. § 75-2-302 (Rev.2002).
¶ 19. As stated, in the present case, the Rushings satisfied the payment of the debt of the original loan and the additional monies received upon renewal of the loan. Hence, the Rushings assert no defenses to the payment of that note or to any note in default. The Rushings, instead, seek damages allegedly resulting from the negligent handling of their loan. No terms or conditions of their loan agreement allowed Trustmark to manage their loan in a negligent manner,[5] or waived Trustmark’s obligation to perform in good faith.[6] There *734 fore, the waiver doctrine articulated in Wattman fails to apply to the tort claims asserted by the Rushings in this case.[7]
¶20. The obligation of good faith imposed by law into every contract is not subject to waiver.[8] Accordingly, I submit that a contract term asserting to waive the obligation of good faith would be considered void as an unconscionable term. In Sawyers, 26 So.3d at 1034-35 (¶ 21), the Mississippi Supreme Court stated:
Substantive unconscionability is proven by oppressive contract terms such that “there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party’s nonperformance or breach.” [Bank of Indiana, Nat. Ass’n v.] Holyfield, 476 F.Supp. 104,] 110 [ (S.D.Miss.1979) ].
[[Image here]]
“The law of Mississippi imposes an obligation of good faith and fundamental fairness[9] in the performance of every contract!.] [T]his requirement is so pronounced that courts have the power to refuse to enforce any contract in order to avoid an unconscionable result.” Section 75-2-302 of the Mississippi Code provides: “If the court as a matter of law finds the contract to have been unconscionable it may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.”
¶21. With respect to damages, I note that the Rushings obtained new long-term financing from a different financial institute. Section 75-4-103(e) (Rev.2002) provides that “[t]he measure of damages for failure to exercise ordinary care ... is the amount of the item reduced by an amount that could not have been realized by the exercise of ordinary caret,]” and if bad faith exists, damages include “any other damages the party suffered as a proximate consequence.”[10] See also Wise v. Valley Bank, 861 So.2d 1029, 1033-35 (¶¶ 12-17) (Miss.2003) (discussing bad faith, damages, and a bank’s duty to exercise care during the investigation of a customer’s complaint of wrongful withdrawal).
*735 ¶ 22. In conclusion, no terms or conditions in the loan agreement in today’s case waives or relieves Trustmark from its obligation to handle the administration of the Rushings’ loan with good faith and ordinary care. Therefore, the Rushings’ claims of negligence against Trustmark should have survived summary judgment since a question of fact existed as to whether Trustmark breached its duty of good faith in negligently handling[11] in its loan administration, i.e. in providing negligent or unauthorized draws[12] or payments[13] to Hale Construction,[14] resulting in damages to the Rushings.[15] Additionally, with respect to the Rushings’ breach of fiduciary duty claim, a question of material fact existed as to whether the bank loan officer, Carl Sandberg, as an agent of the bank, created a fiduciary relationship by his representations with the Rushings, and, if so, whether Sandberg breached his fiduciary duty.[16]
¶ 28. Based on the foregoing reasons, I respectfully dissent from the majority’s opinion.
IRVING, P.J., and RUSSELL, J„ join this opinion.

. The majority also cites to Gay v. First National Bank, 172 Miss. 681, 686, 160 So. 904, 905 (1935), for this same proposition.

. See generally Chimento v. Fuller, 965 So.2d 668, 673-74 (¶¶ 23-26) (Miss.2007) (citing Crane v. French, 38 Miss. 503, 531-32 (1860) (discussing the contractual waiver of legal rights, specifically the statute of limitations).

. I further note that nothing in the loan agreement reflects that the Rushings authorized the bank to remit draws directly to the contractor.

. See generally 1 Gerald L. Blanchard, Lender Liability: Law, Practice and Prevention § 7:04 (Supp.2001) (discussing negligent loan administration).

. See Miss.Code Ann. § 75-4-103(a) (Rev. 2002) (providing that "the parties to the agreement cannot disclaim a bank’s responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure”).

. See Miss.Code Ann. § 75-4-103(a).

. In comparison, Mississippi statutes involving commercial transactions reflect similar policy in setting forth the UCC’s objective of promoting certainty and predictability in loan transactions. See Miss.Code Ann. § 75-5-103 (Supp.2010). See also Union Planters, Nat’l Ass’n v. Rogers, 912 So.2d 116, 120-21 (¶ 13) (Miss.2005) (citing UCC § 4-406). These statutes adhere to the objective for certainty and predictability with respect to credit in requiring compliance with standard practices as set forth in Mississippi Code Annotated section 75-5-108(a) and (e) (Rev.2002). Additionally, Mississippi Code Annotated section 75-5-108(g) provides that "[i]f an undertaking constituting a letter of credit under Section 75-5-102(a)(10) contains nondocumenta-ry conditions, an issuer shall disregard the nondocumentary conditions and treat them as if they were not stated.” See Corporacion de Mercadeo Agricola v. Mellon Bank Int’l, 464 F.Supp. 88, 91 (S.D.N.Y.1978), aff'd, 608 F.2d 43 (2d Cir.1979) ("It is black letter law that the terms and conditions of a letter of credit must be strictly adhered to. There is no discretion in the bank to waive any of these requirements. The terms of the letter constitute an agreement between the purchaser and the bank.”) (internal citations omitted).

.See generally Stanford Young, Mississippi Practice Series: Trial Handbook for Mississippi Lawyers § 32:19 (3d ed. Supp.2003) (discussing damages in breach-of-contract cases).

. No terms or conditions in the written loan agreement authorizes Trustmark or the loan officer involved to make payments, or draws, directly to the contractor. Rather, the loan agreement only reflects the loan to the customers, the Rushings. See Humphreys County v. Guy Jones, Jr. Const. Co., Inc., 910 So.2d 1129, 1132 (¶ 14) (Miss.Ct.App.2005) (finding that ambiguous contract terms and conditions are construed against the drafter). See also Miss.Code Ann. § 75-5-108(g) (providing an issuer must disregard non-documented conditions involving credit falling under that statute).

. See Miss.Code Ann. § 75-3-104(e) (Rev. 2002) ("An instrument is a ‘note’ if it is a promise and is a 'draft' if it is an order.”).

. See Miss.Code Ann. § 75-4 — 102(b) (Rev. 2002) ("The liability of a bank for action or non-action with respect to an item handled by it for purposes of presentment, payment, or collection is governed by the law of the place where the bank is located.”).

. A review of the loan agreement in the case at hand shows no privity of contract existed between Hale Construction and Trustmark. See United. Plumbing & Heating Co., Inc. v. AmSouth Bank, 30 So.3d 343, 347 (¶ 13) (Miss.Ct.App.2009).

. See Miss.Code Ann. § 75-4-103.

.While I acknowledge that the relationship between a bank and its depositor is generally not a fiduciary one, see Wise, 861 So.2d at 1033 (¶ 11), I assert that a question exists as to whether Sandberg, through his own misrepresentations created a fiduciary duty with the Rushings. As an agent of Trustmark, his representations would bind Trustmark. In discussing an agent's authority, this Court has provided:
Under general Mississippi law, an agent's authority may be either actual or apparent. Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1180 (Miss.1990). The issue of actual authority need not be reached if the agent had apparent authority. Baxter Porter & Sons Well Servicing Co., Inc. v. Venture Oil Corp., 488 So.2d 793, 796 (Miss.1986) (citing McPherson v. McLendon, 221 So.2d 75, 79 (1969)). "Apparent authority exists when a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent that the agent has the power he is assumed to have.” Andrew Jackson, 566 So.2d at 1180 (citing Ford v. Lamar Life Ins. Co., 513 So.2d 880, 888 (Miss.1987)).
Delta Chem. & Petroleum, Inc. v. Citizens Bank of Byhalia, Miss., 790 So.2d 862, 874 (¶ 37) (Miss.Ct.App.2001).